IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ANDREW LECHTER; SYLVIA THOMPSON; LAWSON F. THOMPSON; RUSSELL DALBA; and KATHRYN DALBA, on behalf of themselves and all other similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APRIO, LLP f/k/a HABIF, AROGETI & WYNNE, LLP, ET AL.<br><br>Defendants. | CIVIL ACTION FILE NO. 1:20-cv-01325-AT |

## DEFENDANT GEORGIA-ALABAMA LAND TRUST, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

COMES NOW Defendant Georgia-Alabama Land Trust, Inc. ("GALT") and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, submits this memorandum of law in support of its motion to dismiss Plaintiff's Original Class Action Complaint for failure to state a claim upon which relief may be granted.

## I. INTRODUCTION

GALT's only involvement in this matter is fulfilling its legitimate nonprofit

mission of conserving land for the benefit of the public, now and in the future.  It accepted a donation of two conservation easements described in the Complaint. GALT is not an organization that dispenses legal or tax advice – it protects and stewards land.  It did not provide Plaintiffs with any advice, direction or information. In fact, there is not even a hint in the Complaint that any employee of GALT even knew about Plaintiffs' existence.  The Court should not countenance Plaintiffs' attempt to wrap GALT up in the whirlwind of litigation emanating from their failed attempt to avoid paying federal income tax.

Plaintiffs are members of and investors in limited liability companies ("LLCs") that conveyed conservation easements on rural property in Effingham County, Georgia to land trusts in 2010. Following their investments in the LLCs, which they refer to as "syndicates," Plaintiffs took significant personal income tax deductions for the LLC's charitable donation of the conservation easement. The IRS audited the LLCs' tax returns, and has indicated that the deduction will not be allowed at the LLC level.

Concerned over tax liability and penalties for their individual deductions, Plaintiffs have sued a myriad of entities and individuals who purportedly were involved in putting together the "scheme" pursuant to which the Plaintiffs took the deductions passed down from the LLC.

GALT is entitled to have the Court dismiss Plaintiffs' claims against them for several reasons.  First, the claims these Plaintiffs are asserting do not belong to them, rather, the claims belong to the LLCs who attempted to benefit from the charitable tax deduction.  Second, there is a lack of causation between Plaintiffs' claimed injury and the alleged conduct of GALT.  Specifically, Plaintiffs have asserted that the reason the deduction was disallowed was each LLC's intentional failure to include the "cost basis" and the fair market of property subject to the conservation easement as required on the Form 8283 Appraisal Summary – something with which GALT had no involvement. Third, Plaintiffs' claims were barred by the statute of limitations by December 2019 at the latest, but they waited until March 2020 to assert them. Fourth, Plaintiffs' allegations of fraud, RICO and negligent misrepresentation set forth in their 175-page shotgun Complaint that loosely refer to "Defendants" fail to meet the pleading requirements of Rule 9(b) or to state required elements of a claim against GALT.  In particular, Plaintiffs' RICO claims fail to identify any predicate acts of illegal activity by GALT.  Finally, Plaintiffs' remaining claims for state RICO, conspiracy and aiding and abetting also fail on the merits.

## II.    STATEMENT OF MATERIAL FACTS[1]

Plaintiffs' allegations arise from their purported involvement as participants in a tax savings strategy that they describe as a Syndicated Conservation Easement Strategy (the "SCE Strategy").  [Compl. ¶ 1.]

### A.    Plaintiffs and GALT

Plaintiffs are investors and members of LLCs that donated conservation easements to land trusts, such as GALT. [Comp. ¶¶ 79, 84, 132, 137.] Russell Dalba and Kathryn Dalba ( "Dalba Plaintiffs") invested $42,000 in the Maple Landing LLC [*id*. ¶ 79], Sylvia Thompson and Lawson F. Thompson invested $19,000 in the Mossy Rock LLC [*id*. ¶ 106], Andrew Lechter ("Lechter") invested $141,312 in the Oakhill LLC [*id*. ¶ 132], and each became a member of the LLC in which he or she invested.[2] The LLCs, which are not parties to the lawsuit, are limited liability companies formed for the specific purpose of acquiring an interest in real property, obtaining investors, and holding the property for future development or placing it into a conservation easement. [*Id*. ¶¶ 71, 126.]

---

[1] The factual allegations set forth below are taken as true only for purposes of this motion, and GALT reserves the right to dispute them at a later point should litigation proceed.
[2] Plaintiffs assert their claims as a class action on behalf of themselves and all others similarly situated.

GALT is a non-profit land trust to which Maple Landing and Oakhill donated their conservation easements. [Compl. ¶¶ 58(g), 84, 137.] None of the Plaintiffs had any direct communication or interaction with GALT.  *See generally*, Compl.

## B.     The LLC Transactions[3]

Each of the transactions involved a donation of a conservation easement *by the LLC*. [Compl. ¶¶ 84, 137.] Donors may be able to realize a noncash charitable contribution deduction for "the value by which the easement impairs the fair market value of the property" if the transactions meet the requirements of a "qualified conservation contribution."  [*Id*. ¶¶ 2, 38-39.]

For each transaction, *the LLC* offered 95%-99% of the interests of the LLC to potential participants, such as Plaintiffs, in exchange for cash. [Compl. ¶ 44(c).] Thereafter, the "*Manager of the Syndicate* determines that a conservation easement is the appropriate and preferred use of the land. The *Syndicate members* then accept the *Manager's* decision." [*Id*. ¶ 44(e) (emphasis added).] The *LLC* reports the value of the charitable deduction on its tax return. [*Id*. ¶ 45.] Plaintiffs allege that the appraisals (not prepared by GALT) to support the tax deduction contained grossly inflated valuations. [*Id*. ¶ 5.]

---

[3] GALT is not alleged to have been involved with the Mossy Rock LLC, and therefore it is not addressed herein.

Each Plaintiff reported the charitable deductions on his or her personal tax return based on a Schedule K-1 received from the respective LLC, following the advice of their tax advisors. [Compl. ¶¶ 43, 54.]

### 1. Maple Landing

Maple Landing, LLC acquired 283.42 acres of property in Effingham County, Georgia. [Compl. ¶ 70.] The LLC offered 99% of its ownership interests through promotional materials and a legal opinion that "were designed to convince potential participants that the SCE Strategy, through the Maple Landing Syndicate, provided a legal and legitimate way to save on taxes through a conservation easement." [Compl. ¶¶ 71-73.] Plaintiffs do not alleged GALT was involved in preparation of those materials. [*Id.*] Maple Landing represented to the Dalba Plaintiffs that the "granting of the conservation easement could have significant tax benefits." [*Id.* ¶ 75(h).] Maple Landing's manager elected to move forward with donating a conservation easement and the members "approved" Maple Landing's contribution of the conservation easement to GALT. [*Id.* ¶¶ 80-81.]

GALT was involved with preparation of the Conservation Easement Deed, to which it is a party, that listed "conservation purposes" in line with those set forth under § 170 of the Tax Code. [Compl. ¶¶ 58(g), 82.] GALT also assisted with

preparation of a Baseline Documentation Report ("BDR")[4] verified by Maple

Landing and filed with Maple Landing's Appraisal Summary (Form 8283[5]) and tax

return. [*Id*.] Defendant Tennille submitted a final appraisal that valued the

conservation easement at $6,791,000. [*Id*. ¶ 83.] Maple Landing conveyed the

conservation easement to GALT on December 30, 2010. [*Id*. ¶ 84.]

The Aprio Defendants reported this donation on Maple Landing's 2010 tax

return and the K-1 forms for each investor in Maple Landing. [Compl. ¶¶ 90-91.]

The Dalba Plaintiffs reported a charitable deduction of $162,984[6] on their 2010 tax

return. [*Id*. ¶ 93.] The Dalba Plaintiffs do not allege that GALT provided them with

any advice about how to report Maple Landing's charitable deduction.[7]

---

[4] A copy of the Maple Landing BDR is attached as Exhibit A. The Court may consider documents referenced in a pleading at the motion to dismiss stage even if they were not originally attached to the Complaint.  *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). GALT prepares a BDR to comply with Land Trust Alliance Standard 11 to document the "conservation values protected by the easement" and "the relevant conditions of the property as necessary to monitor and enforce the easement." *See* Land Trust Standards and Practices (Revised 2017), available at http://s3.amazonaws.com/landtrustalliance.org/LandTrustStandardsand Practices.pdf.

[5] The section of Form 8283 signed by GALT makes clear that GALT's acknowledgement of receiving the described property "does not represent agreement with the claimed fair market value."  *See* Exhibit B.

[6] The Dalba Plaintiffs had invested $42,000 in Maple Landing. [Compl. ¶ 79.]

[7] Plaintiffs loosely refer to actions by "Defendants" throughout the Complaint, but identify very few allegations specifically identifying actions by GALT.

In October 2012, Maple Landing received an IRS Notice indicating its 2010 tax return had been selected for audit. [Compl. ¶ 94.] Plaintiffs allege that the Aprio Defendants "prepared the Appraisal Summary Form 8283, in which the Aprio Defendants intentionally did not disclose the 'cost basis' of the property as required." [*Id*. ¶ 95.] On November 25, 2014, Maple Landing's tax matters partner sent its members the November 17, 2014 IRS Revenue Agent Report (the "Maple Landing RAR") that concluded the entire charitable contribution for the Maple Landing conservation easement would be disallowed at the partnership level. [*Id*. ¶ 96.] On or around October 31, 2017, the IRS issued a Final Partnership Administrative Adjustment ("FPAA") for Maple Landing's 2010 tax year adopting the findings of the Maple Landing RAR. [Compl. ¶ 98.]

## 2.   Oakhill Woods

Oakhill Woods, LLC ("Oakhill") acquired 380 acres of property in Effingham County, Georgia. [Compl. ¶ 125.]  Oakhill offered 99% of its ownership interests through promotional materials that "were designed and used to convince potential participants that the SCE Strategy, through the Oakhill Syndicate, provided a legal and legitimate way to save on taxes through a conservation easement." [*Id*. ¶¶ 126-127.] Plaintiffs do not allege that GALT was involved in preparation of those materials. [*Id.*] Oakhill represented to Lechter that the "granting of the conservation

easement could have significant tax benefits." [*Id*. ¶ 129(h)]. Oakhill's managers elected to move forward with donating a conservation easement and the members "approved" Oakhill's contribution of the conservation easement. [*Id*. ¶¶ 133-34.]

GALT was involved with preparation of the Conservation Easement Deed, to which it is a party, that listed "conservation purposes" in line with those set forth under § 170 of the Tax Code. [Compl. ¶¶ 58(g), 135, 136.] GALT also assisted with preparation of a Baseline Documentation Report ("BDR")[8] verified by Oakhill and filed with Oakhill's Appraisal Summary (Form 8283[9]) and tax return. [*Id*. ¶¶ 58(g), 136.] Defendant Tennille submitted a final appraisal that valued the conservation easement at $7,949,000. [*Id*. ¶ 139.] Oakhill conveyed the conservation easement to GALT on December 7, 2010. [*Id*. ¶ 137.]

The Aprio Defendants prepared Oakhill's 2010 tax return that reported a charitable contribution of $7,949,000 and the K-1 forms for each investor in Oakhill. [Compl. ¶¶ 141-143.] Lechter reported a charitable deduction of $635,920[10] on his 2010 individual tax return. [*Id*. ¶ 145.] Lechter does not allege that GALT provided him with any advice about how to report Oakhill's charitable deduction.

---

[8]  A copy of the Oakhill BDR is attached as Exhibit C.

[9]  The section of Form 8283 signed by GALT makes clear that GALT's acknowledgement of receiving the described property "does not represent agreement with the claimed fair market value."  *See* Exhibit D.

[10] Lechter had invested $141,312.00 in Oakhill. [Compl. ¶ 132.]

Oakhill received an IRS Notice indicating its 2010 tax return had been selected for audit. [Compl. ¶ 146.] On July 12, 2016, Oakhill's manager sent Lechter a letter informing him that the deduction had been disallowed, but did not tell him the primary reason for it, which was, according to Lechter, "the failure of the Aprio Defendants to properly substantiate the deduction by reason of omitting the cost basis from the Form 8283." [*Id.* ¶ 148.] On or around September, 2017, the IRS issued an FPAA for Oakhill's 2010 tax year. [*Id.* ¶149.]

On February 13, 2020, the Tax Court issued a memorandum opinion[11], holding that Oakhill "failed to report its 'cost or adjusted basis' and thus failed to attach to its partnership return a properly completed Form 8283." [*Id.* ¶ 150.] The Tax Court further held that Oakhill had submitted an "intentionally incomplete Form 8283." [*Id.*] The Tax Court also noted that "Oakhill . . . took the position that the 379 acres had appreciated by more than 800% during the previous 3 ½ years amid the worst real estate crisis since the Great Depression." [*Id.* ¶ 151.]

### 3.    Known Risks of Conservation Easement Donations and Deductions

Plaintiffs assert that the structure of the foregoing transactions involved tax

---

[11] A copy of the Tax Court opinion, *Oakhill Woods, LLC v. Comm'r*, T.C. Memo 2020-24, 2020 Tax Ct. Memo LEXIS 23, is attached as Exhibit E. A copy of the Tax Court opinion in the Maple Landing matter, *Maple Landing, LLC v. Comm'r*, T.C. Memo 2020-104, 2020 Tax Ct. Memo LEXIS 105, is attached as Exhibit F.

deductions "that the IRS was already carefully scrutinizing and indicating to professional advisors it would disallow." [Compl. ¶ 48.] Indeed, "[a]s early as 1984," Plaintiffs allege the IRS had warned of its lack of tolerance for overvaluation of conservation easement charitable contributions. [*Id*. ¶ 60.] Further, Defendants were allegedly "put on notice as early as 1984 that the failure to set forth the cost basis of the donated property on the Form 8283 results in the complete disallowance of the charitable donation." [*Id*. ¶ 64.] Then, in 2004, "the IRS officially identified conservation easements as purportedly generating deductions that the IRS would carefully scrutinize and eventually disallow if certain circumstances were present." [*Id*. ¶ 65.] Plaintiffs also point out that "170(h) of the [Tax] Code did not contemplate the use of partnerships to realize these tax benefits." [*Id*. ¶ 220.] Notwithstanding the foregoing, Plaintiffs proceeded with the transactions.

### 4.    Plaintiffs' Claims Against GALT

Plaintiffs assert claims against all Defendants, including GALT, for violations of RICO 18 U.S.C. § 1962(C), RICO 18 U.S.C. § 1962(D) (by conspiring to violate 18 U.S.C. § 1962(C)) and Georgia RICO, conspiracy to violate Georgia RICO (O.C.G.A. § 16-14-4(C)), negligent misrepresentation, fraud, aiding and abetting, and civil conspiracy.

## III.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Legal Standard for a Motion to Dismiss.

Fed. R. Civ. Proc. 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010).   The Eleventh Circuit has adopted the Supreme Court's two-pronged approach: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Cigna Corp.*, 605 F.3d at 1290.   Therefore, the factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true" and show "more than

---

[12] "'[U]nwarranted deductions of fact' in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations" and the "court is not required to accept a plaintiff's legal conclusions." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

a sheer possibility that a defendant has acted unlawfully." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Iqbal*, 556 U.S. at 678. Importantly, the "courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Cigna Corp.*, 605 F.3d at 1290 (*citing Twombly*, 550 U.S. at 567).

**B.   <u>Plaintiffs Lack Standing to Assert Claims Against GALT.</u>**

**1.  Plaintiffs' burden of proof for standing**

Plaintiffs lack standing to assert claims against GALT. Standing is a threshold jurisdictional question for the Court. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir. 2005). A party invoking federal jurisdiction bears the burden of establishing standing at the commencement of the action. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). This burden must be "clearly" met. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (*quoting Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Plaintiffs cannot meet the three-prong requirement for standing: first, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; second, there must be a causal connection between the

injury and the conduct complained of; and third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lewis v. Governor of Ala.*, 944 F.3d 1287, 1296 (11th Cir. 2019) (*citing Lujan*, 504 U.S. at 560-61). "Failure to satisfy any of these three requirements is fatal." *I.L. v. Alabama*, 739 F.3d 1273, 1278 (11th Cir. 2014).

## 2.   Members of an LLC Cannot Assert Claims Belonging to the LLC.

Plaintiffs were not parties to the real estate transaction that they are complaining caused them damage.  Thus, they cannot demonstrate the causal link between Defendants' actions and their personal injury. The LLCs (Maple Landing and Oakhill as it pertains to GALT) conveyed the conservation easements conveyed to GALT; the Plaintiffs did not. [Compl. ¶¶ 84, 137.][13]

A member of an LLC, such as these Plaintiffs, does not have standing to assert a claim relating to the LLC's property. O.C.G.A. § 14-11-501(a) ("A member has no interest in specific limited liability company property"); *see also In re Stadler*, No. 04-91944, 2005 Bankr. LEXIS 571, at **2-3 (Bankr. N.D. Ga. Mar. 31, 2005) ("[W]hat belongs to the LLC does not belong to the member, any more that [sic] property of a corporation belongs to a shareholder or property of a partnership

---

[13] Plaintiffs were investors in those LLCs [*id.* ¶¶ 40, 79, 132] and approved each LLC's donation [*id.* ¶¶ 44(e), 80-81, 133-34], which each LLCs reported on its tax return [*id.* ¶¶ 45, 90-91, 141-43].

belongs to a partner."). Additionally, under O.C.G.A. § 14-11-1107(j), "[a] member of [an LLC] is not a proper party to a proceeding by or against [an LLC] . . . except where the object of the proceeding is to enforce a member's right against or liability to the [LLC] . . . ." Here, Plaintiffs are asserting claims, which to the extent they have merit (which is denied), belong to the Maple Landing and Oakhill LLCs as the entities that conveyed the conservation easement to GALT.

Northern District Court Judge Duffey faced this exact same issue in *L. Dean Heard v. GMAC Mortg., LLC*, No. 1:12-cv-4239-WSD, 2013 U.S. Dist. LEXIS 202759 (N.D. Ga. July 19, 2013). Judge Duffey dismissed an LLC member's complaint asserting claims for wrongful foreclosure, fraud, and negligent infliction of emotional distress, among other claims, following defendant's foreclosure on property owned by the LLC. As the plaintiff LLC member was not a party to the note, security deed or quitclaim deed, the court held that the member (who was the "sole member" of the LLC) lacked standing to assert claims based on defendant's foreclosure of the property owned by the LLC. *Id.* at *6. The member could not "show that he was injured by Defendant's alleged misconduct." *Id.*

Similarly, *Harris v. Orange, S.A.*, 636 Fed. Appx. 476 (11th Cir. 2015)[14], provides a detailed analysis as to why a shareholder in a corporation lacks standing

---

[14] *Harris* involved a corporation, but the court's analysis equally applies to an LLC.

to assert state and federal RICO claims when the underlying transaction purportedly giving rise to the claim was by the corporation. In *Harris*, plaintiff's "primary alleged injuries flowed from her status as a shareholder and the diminution in the value of her shares" following the corporation's transfer of its intellectual property from a corporation in which plaintiff and defendants were shareholders to a different corporation owned solely by the defendants. *Id.* at 481. Even though the plaintiff alleged an injury different and separate from the other shareholders, the Eleventh Circuit held that this difference did not confer standing because standing does not exist where the "harm suffered by the plaintiff shareholder [is] 'purely contingent' on the harm suffered by the corporation." *Id.*

As in *Heard* and *Harris*, Plaintiffs in this case have no direct interest in the real property and lack standing to claim damages as a result of the transfer. GALT's limited involvement was solely with the LLCs. [*See, e.g.*, Compl. ¶ 58(g) (Land Trust Defendants purportedly provided a letter to the Syndicate confirming the donation and purported representation regarding tax deduction), ¶ 75(g) (stating the Syndicate had begun negotiations with the land trust).] Plaintiffs' efforts to bypass the LLCs and assert direct claims should be quashed. *See United States v. Rogan*, 639 F.3d 1106, 1109 (7th Cir. 2011) (applying Georgia law) ("A direct claim would cut out other equity investors in, and creditors of, [the LLC]").

-16-

Plaintiffs should not be permitted to benefit from the liability protections inherent in the corporate form of an LLC (*see, e.g.*, O.C.G.A. § 14-11-303) and then be allowed to assert claims arising solely from their membership in the LLC.  *See, e.g., Winzer v. EHCA Dunwoody, LLC*, 277 Ga. App. 710, 714 (2006) ("those who accept the benefits of a limited liability company must also accept its burdens" in discussing requirement that LLCs appear in court through representation by counsel, similar to requirement of corporations).[15]

### 3.   Plaintiffs Cannot Meet the Causation Requirements of Standing.

In addition to attempting to hijack the claims of the LLC, Plaintiffs cannot otherwise meet the causation requirement to state claims against GALT. To establish the causation element of standing, or "traceability," "the injury must be 'fairly . . . trace[able]' to the defendant's conduct, as opposed to the action of an absent third party." *Lewis*, 944 F.3d at 1296 (*citing Lujan*, 504 U.S. at 561).

---

[15] As set forth by the Kentucky Supreme Court, "an LLC is not a legal coat that one slips on to protect the owner from liability but then discards or ignores altogether when it is time to pursue a damage claim." *Turner v. Andrew*, 413 S.W.3d 272 (Ky. 2013); *see also Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 347-48 (4th Cir. 2013) (finding LLC members "have failed to account for the fact that they elected to conduct their business through a limited liability company . . . .  [T]hey gave up standing to claim damages to the LLC, even if they also suffered personal damages as a consequence.").

First, Plaintiffs assert that the IRS disallowed the LLC's charitable deduction because the LLC intentionally failed to disclose the "cost basis" of the property on the Appraisal Summary Form 8283. [Compl. ¶¶ 95, 150.] Plaintiffs do not allege that GALT is responsible for this intentional conduct; rather, they assert that intentional failure was caused by the LLC or the Aprio Defendants. [*Id.*][16]

Moreover, Plaintiffs' self-inflicted injuries cannot serve as a basis of causation. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Plaintiffs have explained in great detail how "as early as 1984," the IRS had indicated it would scrutinize transactions like the ones at issue in this case.  Plaintiffs are expected to know the tax law.  *See Cherry-Burrell Corp. v. United States*, 367 F.2d 669, 674-75 (8th Cir. 1966) (plaintiffs are presumed to know the tax regulations). Notwithstanding the well-established IRS views on conservation easements, Plaintiffs proceeded with the transactions and assumed the risk of the deduction not being allowed. They do not have standing to now complain about that.

Further, as to Plaintiffs' RICO claims, Plaintiffs' purported link between the alleged RICO violations and Plaintiffs' injury is "too remote" to state a claim.  *Hemi Group, LLC v. City of New York*, 559 U.S. 1, 2 (2010) (*quoting Holmes v. Securities*

---

[16] Plaintiffs also allege that they followed the Aprio Defendants' advice in signing their Form K-1s, which is not related to GALT. [Compl. ¶¶ 91, 143.]

*Investor Protection Corp.*, 503 U.S. 258, 271 (1992)). To establish causation for a RICO claim, a plaintiff must allege an injury "by reason of" the defendants' racketeering activity. 18 U.S.C. § 1964(c). A plaintiff has standing only if his injuries were proximately caused by the RICO violation, which is shown by a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268; *see also Morast v. Lance*, 807 F.2d 926, 933 (11th Cir. 1987) (no standing where injury "did not flow directly" from defendants' actions). Thus, "a party whose injuries result 'merely from the misfortunes visited upon a third person by the defendant's acts' lacks standing to pursue a claim under RICO." *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.*, 140 F.3d 898, 906 (11th Cir. 1998).

Here, Plaintiffs' alleged injuries "flow" exclusively from their status as a members of Maple Landing/Oakhill LLCs.[17] Plaintiffs make this point time and again, alleging that the primary purpose of the LLC is its tax structure, which

---

[17] *See* Compl. ¶ 43 (In the case of the SCE Strategy, the Plaintiffs and the Class (i.e., the members of the Syndicate) reported the charitable deductions from the SCE Strategy based on the Schedule K-1 received from the respective Syndicate in which they were a member, as they are required by law to do); ¶ 44(d) (The end result is the Syndicate (which holds the critical property) is owned 95-99% by the participants, and the remainder by the original Syndicate member(s)); ¶58(g) (GALT made purported representations to Syndicate, not its members); ¶ 75(g) (Relationship was between syndicate and GALT, not plaintiffs).

benefits all members—the tax advantage/credit from the easement goes to the LLC, which then flows to the members. [*See* Compl. ¶¶ 40-41, 50, 57(d), 58(f), 88, 114, 140, 180.] Stated differently, without their membership in the LLC, Plaintiffs would not have received this potential tax benefit or the injuries they now claim arose from the transactions between the LLCs and GALT. Standing simply does not exist for RICO where the "harm suffered by the plaintiff shareholder [is] 'purely contingent' on the harm suffered by the corporation." *Harris*, 636 Fed. Appx. at 481 (quoting *Holmes*, 503 U.S. at 271). Yet, that is the very claim Plaintiffs chose to make here, and Plaintiffs, therefore, lack standing to assert a RICO claim against GALT.

Relatedly, standing cannot be established where a more direct victim of the alleged wrongful conduct exists to vindicate the law. *See Hemi Grp., LLC*, 559 U.S. at 11-12 (in analyzing RICO standing requirement, courts consider whether "better situated plaintiffs would have an incentive to sue"). Here, even if there was a fraud (which GALT denies being involved with), the United States government was the "direct victim" of the alleged fraud.

The Ninth Circuit addressed this point of a "direct victim" in a tax shelter matter in *Rezner v. Bayerische Hypo-Und Vereinsbank AG*, 630 F.3d 866 (9th Cir. 2010). In evaluating a taxpayer's claim against defendants, the Ninth Circuit

dismissed the taxpayer's RICO claims for precisely this reason. *Rezner*, 630 F.3d at 873-74. According to the Ninth Circuit, since "the United States, not [the plaintiff], was the immediate victim of [defendant's] fraud and better situated to sue" the defendant, the plaintiff lacked RICO standing. *Id.* at 874. In effect, the *Rezner* court reasoned that defendants did not defraud plaintiff since he got precisely what defendants promised: they offered a tax shelter, and plaintiff participated in that tax shelter.

Here, like *Rezner*, that Plaintiffs may ultimately pay back taxes and interest to the government does not convert the alleged fraud on the United States into a fraud on them. As a result, Plaintiffs lack standing to assert claims against GALT.

## C.   Plaintiffs Asserted Their Claims After the Limitations Period Expired.

### 1.   Plaintiffs' Federal RICO claims are time-barred.

The statute of limitations for a federal civil RICO claim is four years, which begins to run when the plaintiff discovered—or reasonably should have discovered—his/her injury. *See Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 156 (1987); *Rotella v. Wood*, 528 U.S. 549, 552 (2000); *Lehman v. Lucom*, 727 F.3d 1326, 1330 (11th Cir. 2013). This rule applies regardless of whether or when the injury is discovered to be part of a pattern of racketeering.

*Lehman*, 727 F.3d at 1330 (citing *Maiz v. Virani*, 253 F.3d 641, 676 (11th Cir. 2001)).

Here, Plaintiffs' claims are untimely because Plaintiffs allege a racketeering scheme that began in 2010 [*see* Compl. ¶¶ 70-88; 125-140] and was publicly revealed—at the latest—by 2014. [Compl. ¶¶ 96, 146]; *see Oakhill Woods, LLC v. Comm'r*, T.C. Memo 2020-24, 2020 Tax Ct. Memo LEXIS 23, at *8. Indeed, on or about November 17, 2014, the IRS issued a report concluding that it would disallow Maple Landing's 2010 charitable contribution deduction. [*Id.*, ¶ 96.] In December 2014, the IRS issued a report proposing to disallow Oakhill's 2010 claimed charitable contribution. *Oakhill Woods, LLC v. Comm'r*, 2020 Tax Ct. Memo LEXIS 23, at *8.

Without doubt, Plaintiffs had knowledge they had been injured due to the alleged misrepresentations no later than December 2014[18], meaning that their RICO claims were barred by December 2018. Plaintiffs, however, did not file their Complaint until March 2020.

*Klopfenstein v. Deutsche Bank Securities, Inc.*, 592 Fed. Appx. 812 (11th Cir. 2014) supports the dismissal of Plaintiffs' claims as time barred. In *Klopfenstein*,

---

[18] Plaintiffs are presumed to know the tax regulations, *Cherry-Burrell Corp.*, 367 F.2d at 674-75, and therefore the risks of a challenged deduction.

between 1996 and 2000, the plaintiff participated in tax shelters with the defendants. *Id*. at 813. Like Plaintiffs here, Klopfenstein obtained opinion letters for these transactions that supported the legitimacy of such transaction. *Id*. Moreover, like Plaintiffs here, in January 2000, Klopfenstein was audited by the IRS which informed plaintiff that the IRS intended to disallow the deduction. *Id*. The plaintiff in Klopfenstein filed his RICO complaint in 2013. "[O]ffer[ing] no account of the actions he took prior to December 2010 to explore whether he had any claims," the court ultimately held Klopfenstein's RICO claim was time-barred. *Id*. at 815-16; *see also Curtis Inv. Co., LLC v. Bayerische Hypo-Und Vereinsbank*, No. 1:06-cv-2752-WSD, 2007 U.S. Dist. LEXIS 94012, at *34-35 (N.D. Ga. Dec. 20, 2007) (dismissing plaintiff's RICO claims barred by the statute of limitations); *see also Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415 (9th Cir. 1987) ("Damages recoverable under RICO [] do not affect accrual of the cause of action or commencement of the limitation period").

Like Klopfenstein, Plaintiffs here cannot simply bury their head in the sand. Plaintiffs offer no account of the actions they took before December 2018 to explore whether they had any claims against the Defendants. Accordingly, this Court should dismiss Plaintiffs' RICO claims.

### 2.      Plaintiffs' Georgia RICO Claims Are Untimely.

The Georgia RICO claim is also untimely because the claim must be brought within five years of "when the plaintiff discovers, or reasonably should have discovered that he has been injured." *Glock Inc. v. Harper*, 340 Ga. App. 65, 66-67; O.C.G.A. § 16-14-8.   As explained above in connection with Plaintiffs' federal RICO claim, the time for Plaintiffs to assert a Georgia RICO claim expired in December 2019 at the latest, well before Plaintiffs filed their Complaint in March 2020.

### 3.      Plaintiffs Are Too Late in Filing Their Fraud Claim.

Plaintiffs' fraud claim is barred by the four-year statute of limitations for fraud claims in Georgia.  O.C.G.A. § 9-3-31; *Anthony v. Am. Gen. Fin. Servs., Inc.*, 287 Ga. 448, 461 (2010).  A plaintiff must assert a fraud claim within four years of the alleged fraud or the date the plaintiff could have, in the exercise of reasonable diligence, discovered the fraud. *Gerald v. Doran*, 169 Ga. App. 22, 23 (1983).  The Dalba Plaintiffs, with reasonable diligence, could have discovered the purported fraud when the IRS issued a report by November 17, 2014, so the time for them to assert a fraud claim was extinguished by November 17, 2018.  Likewise, Plaintiff Lechter, with reasonable diligence, could have discovered the purported fraud in December 2014 when the IRS issued its notice as to Oakhill, so the time for him to

assert a fraud claim was extinguished by December 2018, well before the Complaint was filed in March 2020.

### 4.   Plaintiffs' Negligent Misrepresentation Claim is Untimely.

Plaintiffs needed to file their negligent misrepresentation claim within four years of incurring their economic loss, which they did not do.  *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 427 (1997).  The Dalba Plaintiffs invested in Maple Landing in December 2010 and Lechter invested in Oakhill in August 2010. Their alleged losses arise from their investment in the respective LLCs, and the time for them to assert a negligent misrepresentation claim expired by December 2014.

### 5.   Plaintiffs' Aiding and Abetting and Conspiracy Claims Are Time Barred.

The limitations periods for civil conspiracy and aiding and abetting claims are based on the limitation period for the underlying tort.  *Weissman v. Williams*, No. 1:15-cv-40(WLS), 2017 U.S. Dist. LEXIS 224797, at *56 (M.D. Ga. Sept. 29, 2017); *Bibb Cty. Sch. Dist. V. Dallemand*, No. 5:16-cv-549(MTT), 2019 U.S. Dist. LEXIS 59922, at *17 n.4. Each of these claims appears to be based on Defendants' fraud and breach of fiduciary duties.[19] [*See* Compl. ¶¶ 336, 351.]   Therefore, their

---

[19] Plaintiffs have not alleged a claim against GALT for breach of fiduciary duties, so that does not form a basis for their derivative claims, as explained more fully below.

conspiracy and aiding and abetting claims are subject to the limitations period for fraud, which as explained above, expired by November 2018 for the Dalba Plaintiffs and December 2018 for Plaintiff Lechter. Their conspiracy and aiding and abetting claims are therefore time barred.

### D. Plaintiffs Fail to Meet the Pleading Standards to Assert Claims for Fraud, Negligent Misrepresentation and RICO.

#### 1. Pleading Requirements

Plaintiffs have asserted claims for fraud, negligent misrepresentation and RICO against GALT, but despite including over 75 paragraphs identifying purportedly fraudulent actions [*see* Compl. ¶¶ 329(1)-(77)] and 35 paragraphs of purported predicate acts [*id.* ¶¶ 234(a)-(kk)], Plaintiffs have not met the heightened pleading standard of Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake").

The heightened pleading standard applies equally to claims for RICO, negligent misrepresentation, and fraud. *See Ambrosia Coal & Constr. Co. v. Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007) ("Civil RICO claims, which are essentially a certain breed of fraud claims, must be pled with an increased level of specificity"); *Singleton v. Petland Mall of Ga. LLC*, No. 1:19-cv-01477-ELR, 2020 U.S. Dist. LEXIS 108661, at *18 (N.D. Ga. Mar. 18, 2020). "To satisfy Rule 9(b), a plaintiff must allege, at a minimum, the time, place, and content of the alleged

misrepresentation; the fraudulent scheme; the fraudulent intent of the defendant; and the injury resulting from the fraud." *Singleton*, 2020 U.S. Dist. LEXIS 108661, at *9-10 (*citing Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)). Where, as here, claims are asserted against multiple defendants, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Ambrosia*, 482 F.3d at 1316-17.

### 2.  Plaintiffs Have Not Shown Any Fraud by GALT.

Plaintiffs have failed to set forth facts to support the essential elements of fraud against GALT, and in turn, have failed to meet the heightened standard of Rule 9(b). Plaintiffs' 175-page Complaint does not contain a single allegation of specific fraudulent activity by GALT. Instead, like most of Plaintiffs' allegations, their fraud allegations are described amorphously in terms of actions by the "Defendants directly and indirectly." [Compl. ¶ 329.] Plaintiffs' failure to plead the who, what, when, where and how of GALT's alleged fraud is fatal. *See Douglas v. Southstar Funding, LLC*, No. 1:18-cv-1802-MLB-JSA, 2018 U.S. Dist. LEXIS 222744, at *14 (N.D. Ga. Oct. 18, 2018) (dismissing fraud claim based on conclusory statements as to multiple defendants' actions).

To state a claim for fraud against GALT, Plaintiffs must allege facts sufficient to show "a false representation by a defendant, scienter, intention to induce the

plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Fortson v. Hotard*, 299 Ga. App. 800, 802-03 (2009). Plaintiffs' list of 77 purportedly fraudulent statements does not contain any reference to or attribution to GALT for any of the enumerated actions and statements. [Compl. ¶¶ 329(1)-(77).] Plaintiffs also have not shown that GALT knew it made a false representation to Plaintiff at the time it was made (scienter). Nor have Plaintiffs identified any false statement by GALT on which they relied in acting or not acting.

Although Plaintiffs also allege that "Defendants" made intentional omissions of fact to Plaintiffs [Compl. ¶ 329], they again have not identified any specific facts to support this conclusory statement. Further, "[s]uppression of a material fact is fraud only if there is a duty to disclose arising from a fiduciary relationship or the particular circumstances of the case." *Ledford v. Smith*, 274 Ga. App. 714, 721 (2005). Plaintiffs have not alleged that GALT, a land trust, owed Plaintiffs any fiduciary duty, so to the extent their claim is based on an omission by GALT, it cannot stand.

### 3. Plaintiffs Have Not Alleged That GALT Made a False Statement on Which They Relied to State a Claim for Negligent Misrepresentation.

To assert a claim for negligent misrepresentation against GALT, Plaintiffs must show that "(1) the defendant's negligent supply of false information to

foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Marquis Towers, Inc. v. Highland Grp.*, 265 Ga. App. 343 (2004). Their allegations must comply with Rule 9(b)'s heightened pleading standard. *Singleton*, 2020 U.S. Dist. LEXIS 108661 at *18.

Plaintiffs have not identified any false information that GALT supplied to them upon which they relied to support Count VI. Plaintiffs instead rely on general allegations made against the "Defendants," including incorporating by reference "those misrepresentations and omissions detailed in Count IX below," none of which identify any specific action by GALT.  [*See* Compl. ¶¶ 313; 329(1)-(77).]

Viewing the Complaint as a whole, Plaintiffs at best allege that GALT advised the Maple Landing LLC (*not* Plaintiffs) on December 30, 2010 "that its contribution to [GALT] 'is fully tax deductible,'" [Compl. ¶ 86], and advised the Oakhill LLC (again, *not* Plaintiffs) on December 7, 2010 "that its contribution to [GALT] 'is fully tax deductible'" [*id.*, ¶ 138]. To the extent that Plaintiffs base their claim on the BDRs prepared by GALT which were in turn verified by the LLCs and filed by the LLCs with their Appraisal Summaries (Form 8283s) and tax returns [*see* Compl. ¶¶ 82 & 136], or the Form 8283 "verified" by GALT[20] [*see id.* ¶¶ 89 & 141], Plaintiffs

---

[20] *See* notes 5 & 9, *supra*, and Exs. B & D.

have not identified any representation made to them by GALT in those documents that was false.

Nowhere in the Complaint do Plaintiffs identify any false information supplied *to Plaintiffs* by GALT, and therefore they have failed to assert a required element to state a claim for negligent misrepresentation against GALT. Indeed, the Dalba Plaintiffs and Lechter each committed to invest in the Maple Landing and Oakhill LLCs, respectively, based on information supplied by parties other than GALT. The Dalbas make clear that they invested in Maple Landing based on a legal opinion from Sirote and Promotional Materials prepared by Maple Landing's managers and Sirote (and review by the Aprio Defendants). [*See* Compl. ¶¶ 72, 73, 79.] Likewise, Lechter invested in Oakhill in reliance on Promotional Materials prepared jointly by the Oakhill managers and Sirote (and reviewed and approved by the Aprio Defendants). [*Id.* ¶¶ 127, 132.]

Further, Plaintiffs have not identified any specific economic damage that they incurred due to any alleged false statement made by GALT, which simply is not sufficient to cross Rule 9(b)'s pleading threshold. [*See, e.g.,* Compl. ¶ 316 (referring generally to "Defendants' advice" as having caused them damage).] Plaintiffs do not allege that they decided to invest in the syndicates based on any representation by GALT, and certainly not based on any false representation by GALT, and so they

cannot show that their purported economic injury arose due to any false statement made by GALT or was proximately caused by GALT.[21]

Their conclusory allegations are little more than bare recitals of the elements of a claim.  For the same reasons the fraud count fails to meet the heightened pleading standard of Rule 9(b), so does the negligent misrepresentation claim.

### 4.   Plaintiffs Failed to Allege a RICO Claim Against GALT With Particularity.

The Court should reach the same result for Plaintiffs' RICO claims. Plaintiffs' Complaint skirts the Eleventh Circuit's repeated admonition that "[p]articularly with regard to civil RICO claims, plaintiffs must *stop and think* before filing them." *Byrne v. Nezhat*, 261 F.3d 1075, 1115 (11th Cir. 2001), *abrogated in part on other grounds by*, 553 U.S. 639, 646 (2008) (quoting *Pelletier v. Zweifel*, 921 F.2d 1465, 1522 (11th Cir. 1991) (emphasis in original)).  The long list of "Defendants' and their co-conspirators'" purported violations of RICO does not identify GALT in any way, and falls far short of providing the level of detail necessary to meet the heightened pleading standard. [*See* Compl. ¶¶ 234(a)-(kk).]

---

[21] Notwithstanding Plaintiffs' failure to adequately plead facts to support the other elements of their claim, they also have not shown that it was reasonable for them to rely on GALT for tax-related advice.  It was not.  GALT is a land trust, and Plaintiffs specifically relied on advice from professionals, Sirote and the Aprio Defendants, for the tax treatment of the transactions.

In *Jackson v. BellSouth Telecommunications*, the Eleventh Circuit held that "establishing a RICO enterprise and pattern of racketeering activity" are the "basic requirements" that are "[e]ssential to any successful RICO claim." 372 F.3d 1250, 1264 (11th Cir. 2004).[22] The Complaint here fails to allege these basic elements against GALT and its conclusory allegations ignore the controlling case law and Rule 9(b).

Here, at the pleading stage, Plaintiffs' RICO claims fail as a matter of law because Plaintiffs have not plausibly pled, with required particularity, that GALT: (1) was associated with "any enterprise" in furtherance of the "enterprise's affairs"; (2) "conduct[ed] or participate[d] . . . in the conduct of such enterprise's affairs"; or (3) knew of any other defendants' allegedly unlawful conduct with Plaintiffs. *See Ambrosia*, 482 F.3d at 1316 (RICO claims must be pled with an increased level of specificity under Rule 9(b)).

### a.      Plaintiffs have not sufficiently alleged an enterprise.

To plead a violation of § 1962(c), Plaintiffs must properly allege an enterprise. Plaintiffs try to meet that requirement by alleging an association-in-fact enterprise,

---

[22] 18 U.S.C. § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in . . . interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ."

but fail to meet this mark. [Compl. ¶ 211 (Plaintiffs' purported "enterprise" consists of "(1) the Defendants; (2) the Sponsors; (3) the Other Participants; and (4) all other persons and entities that associated to solicit persons to participate in the SCE Strategy for the purpose of generated and sharing fees and commissions generated from the SCE Strategy and alleged tax liability reduction it purported to provide.").]

The United States Supreme Court's decision in *United States v. Turkette*, 452 U.S. 576, 583 (1981), is useful to illustrate this point.  The Supreme Court held that an association-in-fact enterprise consists of "a group of persons associated together ***for a common purpose*** of engaging in a course of conduct." *Turkette*, 452 U.S. at 583 (emphasis added). While an association-in-fact enterprise need not have a strict hierarchy, it must have some discernable elements of "structure," namely: "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The Complaint's factual allegations fail to satisfy these basic requirements of pleading an enterprise.

Plaintiffs include purely conclusory allegation in stating that the participants of the enterprise "engaged in a common plan, transaction and course of conduct described herein in connection with the design, promotion, sale and implementation of the SCE Strategy." [Compl. ¶ 214.] Beyond identifying the members of the

alleged association-in-fact enterprise as the 17 Defendants, Other Participants[23], and other non-defendants listed at Paragraph 211, Plaintiffs' enterprise allegations consist of useless formulaic legal conclusions and labels. [*See* Compl. ¶¶ 214-217.]

The Court "cannot accept purely conclusory allegations" of a common purpose. *Ray v. Spirit Airlines*, 836 F.3d 1340, 1352 (11th Cir. 2016). Rather, to allege a common purpose, a plaintiff must allege facts sufficient to give rise to a plausible inference that the members of the purported enterprise "knowingly cooperated" to pursue a common scheme. *Id.* at 1352-1353 (dismissing RICO claim for failure to allege common purpose where plaintiffs did not allege that defendant was "involved in the actual decisions," "knew the true nature" of alleged fraud, or "worked intentionally to misrepresent" facts).

Here, Plaintiffs rely exclusively on the conclusory allegations that the parties purportedly shared a common purpose:

> The Defendants, the Sponsors, and the Other Participants engaged in a common plan, transaction and course of conduct described herein in connection with the design, promotion, sale and implementation of the SCE Strategy. The Defendants, the Sponsors, and the Other Participants knowingly or recklessly engaged in acts, transactions, practices and a course of business that operated as a fraud upon the Plaintiffs and the Class, the primary purpose and effect of which was to generate huge

---

[23] Other Participants apparently include "individuals and entities such as managers, appraisers, attorneys, accountants, brokers, referral sources, engineers, and others not named as Defendants herein who assisted Defendants in designing, promoting, selling, and implementing the SCE Strategy." [Compl. ¶ 36 n.2.]

> fees and commissions by fraudulently selling a series of transactions
> under the guise of generating a legal and legitimate noncash charitable
> contribution deduction.

[Compl. ¶ 214.] These allegations are insufficient. Nowhere do Plaintiffs allege actual facts that GALT was aware of or intended to participate in the SCE scheme relating to the syndicates. Plaintiffs do not provide any factual basis for inferring that GALT "knowingly cooperated" or shared any common purpose with the other Defendants, Sponsors, or Other Participants. *See Ray*, 836 F.3d at 1353.

Further, all of Plaintiffs' allegations are consistent with GALT conducting normal land trust activities that are in no way illegal activities:  (1) engaging in negotiations with the LLC [Compl. ¶¶ 75(g); 129(g)]; (2) assisting with preparation of language in a Conservation Easement Deed[24] [*id.* ¶¶ 87, 135]; (3) verifying an appraisal summary prepared by the other Defendants (Form 8283)[25] [*id.* ¶¶ 89, 136]; (4) preparing the BDRs [*id.* ¶¶ 82 ,136]; and (5) accepting the conveyance of a conservation easement [*id.*. ¶¶ 84, 137].  *Ray* holds that allegations like these, which are merely consistent with legitimate activity, do not give rise to a reasonable inference that GALT shared a common purpose with other Defendants. *See Ray*, 836

---

[24] As a recipient of the easement pursuant to the deed, GALT was obviously involved in the drafting process as the deed sets forth certain requirements and obligations that are binding on GALT. That is not illegal; it is a normal business activity.

[25] *See* notes 5 & 9, *supra*, and Exs. B & D.

F.3d at 1354.

> **b.    Plaintiffs have not alleged that GALT participated in the operation or management of an enterprise.**

Plaintiffs' claims against GALT under 18 U.S.C. § 1962(c) fail for the related but separate reason that Plaintiffs have not plausibly alleged that GALT "participate[d] in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). Liability under Section 1962(c) requires "some part in directing the enterprise's affairs." *Id.* at 179 (emphasis omitted). Plaintiffs must show that "the defendants participated in the conduct of the '*enterprise's affairs*,' not just their *own* affairs." *Id.* at 185 (emphasis in original). "Simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject a defendant to RICO liability under § 1962(c)." *Parm v. Nat'l Bank of Cal., N.A.*, 242 F. Supp. 3d 1321, 1348 (N.D. Ga. 2017).

Although Plaintiffs' summarily allege that the "Defendants, the Sponsors, and the Other Participants maintained an interest in and control of the Enterprise and also conducted or participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity," [Compl., ¶ 216] Plaintiffs' factual allegations do not support these conclusory allegations with respect to GALT. Plaintiffs do not

allege that GALT operated or managed any enterprise involving any other Defendant.

Rather, Plaintiffs' allegations describe GALT's engagement in typical land trust activities, such as taking legal ownership and stewardship over a property interest for the benefit of the general public. These allegations merely show that GALT acted as a land trust entity in furtherance of its own affairs and cannot support Plaintiffs' claims under 18 U.S.C. § 1962(c). *See Parm*, 242 F. Supp. 3d at 1349 (providing banking services did not constitute operation or management of a RICO enterprise); *Flagg v. First Premier Bank*, 257 F. Supp. 3d 1351, 1364 (N.D. Ga. 2017) (same); *see also Mason v. Midland Funding LLC*, No. 1:16-cv-02867, 2017 U.S. Dist. LEXIS 216825, at *58-59 (N.D. Ga. July 27, 2017) (providing legal services did not constitute operation or management of a RICO enterprise); *accord Ray*, 836 F.3d at 1354-55 (finding no association-in-fact enterprises where alleged members were not aware of other member's alleged misrepresentation and were engaged in their own legitimate commercial transactions).

### c. The Complaint fails to adequately plead that GALT engaged in any predicate acts.

Plaintiffs also fail to adequately plead that GALT engaged in a "racketeering activity" (a predicate act). In fact, the only allegation that even purports to set forth any racketeering activity is wholly conclusory: "The numerous predicate acts of wire

and/or mail fraud in addition to other fraudulent acts, are part of separate fraudulent transactions by the Defendants and their co-conspirators designed to defraud the Individual Plaintiffs and the Class of money and property interests under false pretenses." [Compl. ¶ 228.] Plaintiffs attempt to provide "representative examples" of predicate acts, which are followed by a conclusory catch-all; however, not one of the "representative examples" relate to GALT. [*See* Compl. ¶¶ 234(a)-(kk).] Plaintiffs' failure to identify *a single enumerated crime* chargeable under the laws of the United States or any state and punishable by imprisonment for more than one year is, by itself, fatal to their cause of action. Without any specific allegations against GALT completing predicate acts, Plaintiffs' RICO claims fail as a matter of law. *See Burchett v. Lagi*, No. 1:11-CV-2379-TWT, 2012 U.S. Dist. LEXIS 103636 (N.D. Ga. July 25, 2012); *see also J.G. Williams, Inc. v. Regency Props, Ltd.*, 672 F. Supp. 1436 (N.D. Ga. 1987) (dismissing plaintiff's RICO claim due to its failure to adequately allege pattern of racketeering activity).

### d.     Plaintiffs fail to plead a RICO conspiracy claim.

The Court also should dismiss Count II, which alleges that all Defendants conspired to violate the federal RICO statute, because Plaintiffs' underlying claim fails and they fail to provide any factual detail of an agreement to violate RICO.

"Under 18 U.S.C. § 1962(d), it is unlawful to enter into a conspiracy with the intention of violating any other part of § 1962." *Fuller v. Home Depot Servs., LLC*, 512 F. Supp.2d 1289, 1295 (N.D. Ga. 2007). To support a claim of RICO conspiracy, a plaintiff must "allege an illegal agreement to violate a substantive provision of the RICO statute." *Id.* In other words, "[t]o sufficiently state a conspiracy claim, [] the complaint must allege the existence of an agreement to commit an act that is itself illegal." *Id*. "[P]arties cannot be found guilty of conspiring to commit an act that is not itself against the law." *Id.* Accordingly, "if the underlying allegations of RICO violations are not viable, a conspiracy claim based on those violations must also fail." *Id.* (dismissing plaintiff's RICO conspiracy claim because plaintiff failed to sufficiently state substantive RICO claim against defendant). Plaintiffs' conspiracy allegations fail for the same reasons as their substantive allegations, detailed in Section III.D.3, above. Without pleading a plausible claim for violation of 18 U.S.C. § 1962(c), there can be no claim for conspiracy to commit such offense under 18 U.S.C. § 1962(d). *See Chi v. MasterCard International, Inc.*, No. 1:14-CV-614-TWT, 2014 U.S. Dist. LEXIS 142294, at *9 (N.D. Ga. Oct. 7, 2014); *J&D Int'l Trading (H.K.) Ltd. v. MTD Equip., LLC*, No. 1:13-CV-2526-RWS, 2014 U.S. Dist. LEXIS 58888, at *38 (N.D. Ga. Apr. 28, 2014) (same); *Fuller*, 512 F. Supp. 2d at 1295 (same).

As to the requirement of showing agreement to violation RICO, in *United States v. Browne*, 505 F.3d 1229 (11th Cir. 2007), the Eleventh Circuit held that the "touchstone of liability is an agreement to participate in a RICO conspiracy," which requires an allegation and proof that each defendant agreed on the overall objective of the conspiracy. 505 F.3d at 1264 (outlining two methods for showing the required agreement); *see also Jackson*, 372 F.3d at 1269 (failure to allege that defendant "agreed to violate any of the substantive provisions of the RICO laws," is "fatal pleading defect"). Plaintiffs have not met that burden here.

In fact, Plaintiffs merely recast the insufficient allegations used to support their substantive RICO claim. [*See* Compl. ¶¶ 271-274.] The Complaint makes no attempt to state when, where, or how the Defendants supposedly reached an agreement to violate RICO.

## E.    Plaintiffs' Remaining Claims Fail on the Merits.

### 1.    Plaintiffs' Georgia RICO Claim Fails to State a Claim Against GALT.

For the same reasons that Plaintiffs' claim against GALT under the federal RICO statute fails, their claim in Count III based on Georgia's RICO statute (O.C.G.A. §§ 16-14-4(a) & (b)) also fails. Georgia's RICO statute follows the federal statute and is "essentially identical to the federal RICO statute." *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 705, n. 1 (11th Cir. 2014) (noting that "the

Georgia definition of 'racketeering activity' expressly incorporates the federal list of predicate offenses").   Plaintiffs' Georgia RICO claim is not based on any underlying acts separate and apart from those on which Plaintiffs base their federal RICO claims, and therefore it tracks their federal RICO claim.[26]   "[W]here a plaintiff fails to state a federal claim under a particular predicate, his state-law claim under that predicate will fail as well." *Id*. Just as Plaintiffs' federal RICO claim must be dismissed as to GALT, their Georgia RICO claim must also be dismissed.

### 2. Plaintiffs' Georgia RICO Conspiracy Claim Falls With Their Georgia RICO Claim.

While Georgia recognizes a cause of action for conspiracy to commit RICO, the requirements for asserting a RICO conspiracy claim are the same as for asserting a Georgia RICO claim,[27] and an entity can be found liable for RICO conspiracy "if they knowingly and willfully join a conspiracy which itself contains a common plan

---

[26] Plaintiffs vaguely incorporate "their allegations regarding the Enterprise," Compl. ¶ 284, and "their allegations that Defendants have engaged in a pattern of racketeering activity," *id.*, ¶ 285, without any indication of which allegations those are, and, in any event, there is no reference to any activity by GALT identified in Count III.

[27] "To assert a civil claim based upon either a violation of the RICO statute or a conspiracy to violate that statute, a plaintiff must show that the defendants violated or conspired to violate the RICO statute; that as a result of this conduct the plaintiff has suffered injury; and that the defendant's violation of or conspiracy to violate the RICO statute was the proximate cause of the injury." *Wylie v. Denton*, 323 Ga. App. 161, 165 (2013).

or purpose to commit two or more predicate acts." *Wylie*, 323 Ga. App. at 165.  In Count IV, Plaintiffs again do not identify any improper action specific to GALT, and certainly do not set forth any allegations indicating that GALT knowingly joined a RICO conspiracy.  [*See* Compl. ¶¶ 291-301.]

Because Plaintiffs have failed to assert a Georgia RICO claim for the reasons set forth above, they have also failed to set forth a Georgia RICO conspiracy claim which requires the same base elements of a Georgia RICO claim, and Count IV must be dismissed as to GALT.

### 3.    GALT Is Not Alleged to Have Aided and Abetted Any Other Defendant.

In Count X, Plaintiffs assert a claim for "aiding and abetting" against all Defendants other than the Aprio Defendants, but provide no indication of how each individual Defendant, including GALT, aided and abetted any other Defendant or how any such action caused them damage.  Instead, Plaintiffs summarily state that "each of the Defendants aided and abetted the wrongful conduct (including fraud and breaches of fiduciary duty) of each of the other Defendants."  [Compl. ¶ 336.]

To prevail on a claim of aiding and abetting a breach of fiduciary duty, plaintiffs must show the following elements:

(1) through improper action or wrongful conduct and without privilege, the defendant acted to procure a breach of the primary wrongdoer's fiduciary duty to the plaintiff; (2) with knowledge that the primary

> wrongdoer owed the plaintiff a fiduciary duty, the defendant acted purposely and with malice and the intent to injure; (3) the defendant's wrongful conduct procured a breach of the primary wrongdoer's fiduciary duty; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

*Insight Tech., Inc. v. FreightCheck, LLC*, 280 Ga. App. 19, 25-26 (2006).  Plaintiff's summary allegations do not set forth any actions by GALT to show that GALT took any actions to aid and abet any other Defendant to procure the breach of a fiduciary duty.  [*See* Compl. ¶ 336.]  Nor have they alleged that GALT acted purposely and with malice and the intent to injure Plaintiffs or that GALT's conduct "procured a breach of the primary wrongdoer's fiduciary duty" (whoever the unidentified "primary wrongdoer" may even be).  Indeed, Plaintiffs do not identify any action in Count X by any specific Defendant or how any such action procured a breach of fiduciary duty.

To the extent that Count X as to GALT is based on GALT's purported aiding and abetting of some other Defendant's fraud, Plaintiffs have again not identified any action or fraud that GALT aided and abetted.  Further, Georgia courts have concluded that "the tort of 'aiding and abetting fraud' does not exist as a basis for liability under Georgia law." *Siavage v. Gandy*, 350 Ga. App. 562, 566 (2019).  "Instead, one who 'knowingly participat[es] in a fraud' may be held liable for the fraud. Thus, the issue . . . is whether [Plaintiffs] have stated a valid fraud claim

against [GALT]." *Id.* As set forth above, Plaintiffs have not set forth a valid fraud claim against GALT, and as there is not a recognized separate cause of action for aiding and abetting fraud, Plaintiffs' aiding and abetting claim also fails as a matter of law. Plaintiffs' aiding and abetting claim should be dismissed.

### 4. Because Plaintiffs' Underlying Tort Claims Fail, Their Civil Conspiracy Claim as to GALT Also Fails.

In the final count asserted against GALT (and all of the other Defendants), Plaintiffs assert a claim for civil conspiracy. "To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort." *Mustaqeem-Graydon v. SunTrust Bank*, 258 Ga. App. 200, 207 (2002). However, "[a]bsent the underlying tort, there can be no liability for civil conspiracy." *Id.* (finding that conspiracy claim failed where underlying fraud clam failed). Plaintiffs' conspiracy allegations do not identify with specificity exactly which underlying torts purportedly support their civil conspiracy claim, but it appears based upon a "plan of action to perpetrate fraud on Plaintiffs and to breach fiduciary duties owed to Plaintiffs." [Compl. ¶ 351.]

For the reasons already set forth above, Plaintiffs have not adequately alleged a fraud claim against GALT. Without being able to assert a fraud claim as to GALT, Plaintiffs also cannot assert a claim for civil conspiracy based on fraud against GALT. *Mustaqeem-Graydon*, 258 Ga. App. at 207.

-44-

As to a breach of fiduciary duty, Plaintiffs have not asserted such a claim against GALT. Plaintiffs do not anywhere in their Complaint assert that GALT owed them a duty and certainly do not provide notice of how GALT could have owed them any fiduciary duty or what action GALT took that constitutes a breach of such a purported duty.  Indeed, GALT is a land trust, and is not alleged to be a professional that owed any fiduciary duty to anyone, let alone Plaintiffs.  Absent an underlying tort against GALT, a claim for conspiracy to breach fiduciary duties cannot stand against GALT and it must be dismissed by the Court.

### 5.    Plaintiffs' Prayer for Attorneys' Fee and Punitive Damages Fails Because Their Underlying Claims Fail.

Although Plaintiffs have not asserted separate counts seeking attorneys' fees and punitive damages, they request them in their prayer for relief.  Plaintiffs' ability to recover attorneys' fees and punitive damage is dependent upon them having stated a viable cause of action against GALT, which for all of the reasons set forth above, they have not done.  Therefore, the Court should dismiss Plaintiffs' claims for attorneys' fees and punitive damages.  *OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344 n.8 (11th Cir. 2008) ("[U]nder Georgia law, neither an O.C.G.A. § 13-6-11 attorney's fee claim nor an O.C.G.A. § 51-12-5.1 punitive damages claim can survive without an award of relief on an underlying claim").

## IV.   <u>CONCLUSION</u>

Based on the foregoing, GALT respectfully requests that the Court grant its

motion and dismiss Plaintiffs' Original Class Action Complaint with prejudice.

This 7th day of August, 2020.

Respectfully submitted,

FREEMAN MATHIS & GARY, LLP

<u>/s/ Dana K. Maine</u>
Dana K. Maine
Georgia Bar No. 466580
dmaine@fmglaw.com
Robert E. Buckley
Georgia Bar No. 140280
rbuckley@fmglaw.com
Travis M. Cashbaugh
Georgia Bar No. 380162
tcashbaugh@fmglaw.com

*Attorneys for Defendant Georgia-Alabama Land Trust, Inc.*

100 Galleria Parkway
Suite 1600
Atlanta, GA  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

-46-

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to Local Rule 7.1(D), that the foregoing memorandum of law has been prepared in accordance with Local Rule 5.1(C) (Times New Roman font, 14 point).

This 7th day of August, 2020.

FREEMAN MATHIS & GARY, LLP

*/s/ Dana K. Maine*
Dana K. Maine
Georgia Bar No. 466580
dmaine@fmglaw.com

*Attorneys for Defendant Georgia-Alabama Land Trust, Inc.*

100 Galleria Parkway
Suite 1600
Atlanta, GA  30339-5948

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have this day electronically submitted the foregoing **DEFENDANT GEORGIA-ALABAMA LAND TRUST, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants and via United States Postal Service postage prepaid to:

| | |
|---|---|
| David R. Deary | Colin Dang Delaney |
| Donna Lee | Gregory K. Smith |
| Jeven R. Sloan | Anthony J. Rollins |
| Jim L. Flegle | Steven A. Vickery |
| John William McKenzie , III | **SMITH, GAMBRELL & RUSSELL, LLP** |
| Tyler McLean Simpson | Promenade, Suite 3100 |
| William Ralph Canada , Jr. | 1230 Peachtree Street, NE |
| Wilson Edward Wray , Jr. | Atlanta, GA 30309-3592 |
| **LOEWINSOHN FLEGLE DEARY SIMON LLP** | *Attorneys for Defendants Atlantic Coast* |
| 12377 Merit Drive | *Conservancy, Inc. and Robert D. Keller* |
| Dallas, TX 75251 | |

Edward Jon Rappaport
**SAYLOR LAW FIRM LLP**
1201 W Peachtree Street, Suite 3220
Atlanta, GA 30309

*Attorneys for Plaintiffs*

Stephen Hall
**BAKER, DONELSON, BEARMAN,**
  **CALDWELL & BERKOWITZ, P.C.**
Suite 1600, Monarch Plaza
3414 Peachtree Street NE
Atlanta, GA 30326
*Attorneys for Defendant Baker Donelson,*
*Bearman, Caldwell & Berkowitz, P.C.*

Brent D. Hitson
TalaAmirfazli
**BURR & FORMAN, LLP**
171 Seventeenth Street NEW, #100
Atlanta, GA 30363
*Attorneys for Defendant Large &*
*Gilbert, Inc.*

Robert H. Smalley, III
**MCCAMY, PHILLIPS, TUGGLE**
  **& FORDHAM, LLP**
PO Box 1105
Dalton, GA 30722-1105
*Attorney for Defendants David C. Smith*
*and Smith, Lewis & Haley, LLP*

David L. Balser
M. Robert Thornton
J. Andrew Pratt
Billie Pritchard
**KING & SPALDING, LLP**
1180 Peachtree Street
Atlanta, GA 30309
*Attorneys for Sirote & Permutt, PC*

S. Fenn Little, Jr.
**S. FENN LITTLE, JR. PC**
1490 Mescaslin Street NW
Atlanta, GA 30309
*Attorney for Defendants Forever Forests,*
*LLC and Nancy Zak*

Andrew Townsend Tennille, III
Leslie P. Becknell
Barbara A. Marschalk
**TENNILLE, PC**
1266 West Paces Ferry Rd. NW #173
Atlanta, GA 30327
*Attorney for Defendant Tennille &*
*Associates, Inc.*

John E. Floyd
John H. Rains IV
Jennifer Peterson
**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street NW
Atlanta, GA 30309-3417
*Attorney for Defendants Aprio, LLP f/k/a*
*Habif, Arogeti & Wynne, LLP and Robert*
*Greenberger*

This 7th day of August, 2020.

/s/ Dana K. Maine
Dana K. Maine
Georgia Bar No. 466580

*Attorney for Defendant Georgia-Alabama Land Trust, Inc.*

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, Georgia 30339-5948
(770) 818-0000 (telephone)