# EXHIBIT E

 Positive
As of: August 7, 2020 1:49 PM Z

# Oakhill Woods, LLC v. Comm'r

United States Tax Court

February 13, 2020, Filed

Docket No. 26557-17.

**Reporter**
T.C. Memo 2020-24 *; 2020 Tax Ct. Memo LEXIS 23 **

OAKHILL WOODS, LLC, EFFINGHAM MANAGERS, LLC, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent

**Prior History:** Belair Woods, LLC v. Comm'r, T.C. Memo 2018-159, 2018 Tax Ct. Memo LEXIS 160 (T.C., Sept. 20, 2018)

**Disposition:** An order will be issued granting in part respondent's motion for partial summary judgment and denying petitioner's motion for partial summary judgment.

comply with Treas. Reg. § 1.170A-13(c); [2]-This was a case of a conscious election not to supply required information. P did not comply, literally or substantially, with the regulatory reporting requirements; [3]-The Secretary issued regulations requiring that information concerning cost basis and acquisition date be included in the appraisal summary included with the return, Treas. Reg. § 1.170A-13(c)(4)(ii). The Secretary's requirement to this effect was based on a permissible construction of the statute; [4]-Resolution of whether P reasonably relied on advice required the court to address questions as to which genuine disputes of material fact currently appeared to exist.

**Outcome**
The court granted in part the Commissioner's motion for partial summary judgment and denied petitioner's motion for partial summary judgment.

## Core Terms

easement, charitable, acres, Forests, donated, advice, Tract, partial, acquisition, compliance, residential, audit, prescribe, invalid, donor, omission

## Case Summary

### Overview
HOLDINGS: [1]-Petitioner (P) did not provide cost basis information on its Form 8283, and its explanation did not show it was unable to provide the information. Accordingly, P's appraisal summary did not strictly

## LexisNexis® Headnotes

Tax Law > Federal Tax Administration & Procedures > Summary Judgment > Standards for Summary Judgment

**HN1**[⬇] **Summary Judgment, Standards for Summary Judgment**

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-

consuming trials. The court may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. U.S. Tax Ct. R. 121(b).

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

*HN2*[⬇] **Nonbusiness Expenses, Charitable Contributions**

I.R.C. § 170(a)(1) allows as a deduction any charitable contribution made within the taxable year. If the taxpayer makes a charitable contribution of property other than money, the amount of the contribution is generally equal to the fair market value of the property at the time of the contribution. Treas. Reg. § 1.170A-1(c)(1).

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

*HN3*[⬇] **Nonbusiness Expenses, Charitable Contributions**

Where a contribution of property (other than publicly traded securities) is valued in excess of $5,000, the taxpayer must obtain a qualified appraisal of such property and attach to the return such information regarding such property and such appraisal as the Secretary may require. I.R.C. § 170(f)(11)(C). The required information includes "an appraisal summary" that must be attached to the return on which such deduction is first claimed for such contribution. Deficit Reduction Act of 1984 (DEFRA), Pub. L. No. 98-369, § 155(a)(1), 98 Stat. 691; Treas. Reg. § 1.170A-13(c)(2). The IRS has prescribed Form 8283 to be used as the "appraisal summary." Failure to comply with this requirement generally precludes a deduction. I.R.C. § 170(a)(1) (A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary).

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

*HN4*[⬇] **Nonbusiness Expenses, Charitable Contributions**

The regulation requires the donor to "attach a fully completed appraisal summary" to the tax return on which the charitable contribution deduction is first claimed. Treas. Reg. § 1.170A-13(c)(2)(i)(B). A fully completed appraisal summary must include the cost or adjusted basis of the donated property. Treas. Reg. § 1.170A-13(c)(4)(ii)(E). If a taxpayer has reasonable cause for being unable to provide the information required (relating to the manner of acquisition and basis of the contributed property), an appropriate explanation should be attached to the appraisal summary. Treas. Reg. § 1.170A-13(c)(4)(iv)(C)(1). The taxpayer's deduction will not be disallowed simply because of the inability (for reasonable cause) to provide these items of information. Treas. Reg. § 1.170A-13(c)(4)(iv)(C)(1).

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

*HN5*[⬇] **Nonbusiness Expenses, Charitable Contributions**

The regulation excuses the omission of basis information only if reasonable cause is established in the explanation attached to the appraisal summary. Treas. Reg. § 1.170A-13(c)(4)(iv)(C)(1).

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

*HN6*[⬇] **Nonbusiness Expenses, Charitable Contributions**

In Bond, the court held that some of the reporting requirements in Treas. Reg. § 1.170A-13, while helpful to respondent in the processing and auditing of returns, are directory and not mandatory. Thus, in appropriate circumstances, these requirements can be satisfied by substantial, rather than by literal, compliance. The doctrine of substantial compliance is designed to avoid hardship in cases where a taxpayer does all that is reasonably possible, but nonetheless fails to comply with the specific requirements of a provision.

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

***HN7***[⤓] **Nonbusiness Expenses, Charitable Contributions**

Substantial compliance may be shown where the taxpayer provided most of the information required or made omissions solely through inadvertence. But in order to substantially comply, the taxpayer must satisfy all reporting requirements that relate to the substance or essence of the statute. In assessing whether the petitioner substantially complied with the regulation (in question here), the court considers whether it provided sufficient information to enable the IRS to evaluate the reported contributions, as intended by Congress. Congress in 2004 added to the Code I.R.C. § 170(f)(11)(A)(ii)(II), which sets forth a statutory "reasonable cause" defense for failure to comply with the reporting requirements (discussed above). The substantial compliance doctrine has continuing but limited application in a post-§ 170(f)(11) world.

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

***HN8***[⤓] **Nonbusiness Expenses, Charitable Contributions**

The requirement to disclose "cost or adjusted basis" when that information is reasonably obtainable is necessary to facilitate the Commissioner's efficient identification of overvalued property. The cost of property typically corresponds to its fair market value when the taxpayer acquired it. I.R.C. § 1012. Actual sales are generally the best evidence of fair market value. When a taxpayer claims a charitable contribution deduction for recently purchased property, a wide gap between cost basis and claimed value raises a red flag suggesting that the return merits examination. Unless the taxpayer complies with the regulatory requirement that he disclose his cost basis and the date and manner of acquiring the property, the Commissioner will be deprived of an essential tool that Congress intended him to have.

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable

Contributions

***HN9***[⤓] **Nonbusiness Expenses, Charitable Contributions**

Courts have routinely declined to apply the substantial compliance doctrine where entire categories of required information are omitted.

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

***HN10***[⤓] **Nonbusiness Expenses, Charitable Contributions**

The regulation requires that an appraisal summary shall include information concerning basis. Treas. Reg. § 1.170A-13(c)(4)(ii)(E). The explicit disclosure of basis on Form 8283 is essential in alerting the Commissioner as to whether (and to what extent) further investigation may be needed.

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

***HN11***[⤓] **Nonbusiness Expenses, Charitable Contributions**

Where the taxpayer states on Form 8283 that basis information will not be provided, revenue agents cannot be required to sift through hundreds of pages of complex returns looking for possible clues about what the taxpayer's cost basis might be. Nothing in the statute requires the Commissioner to look beyond the written acknowledgment when on its face the acknowledgment fails to provide the information required to substantiate a charitable contribution deduction. If cost basis is not explicitly disclosed where it is required to be disclosed, the Commissioner will be handicapped in identifying suspicious charitable deductions and deterring taxpayers from continuing to play the "audit lottery."

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

***HN12***[⬇] **Nonbusiness Expenses, Charitable Contributions**

Treas. Reg. § 1.170A-13(c)(4)(ii)(D) and (E) set forth the regulatory requirements that an appraisal summary shall include information concerning the manner in which the donor acquired the donated property, the date on which he acquired it, and the cost or other basis of the property adjusted as required by I.R.C. § 1016.

Administrative Law > Judicial Review > Standards of Review > Deference to Agency Statutory Interpretation

***HN13***[⬇] **Standards of Review, Deference to Agency Statutory Interpretation**

When considering a challenge to the validity of a regulation, the court generally looks to the two-part test established by Chevron. The first prong of that test asks whether Congress has directly spoken to the precise question at issue. If Congress has not spoken to the precise question at issue, the second prong requires the court to determine whether the regulation is based on a permissible construction of the statute.

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

***HN14***[⬇] **Nonbusiness Expenses, Charitable Contributions**

Deficit Reduction Act of 1984 (DEFRA), Pub. L. No. 98-369, § 155(a), 98 Stat. 691, which was not codified, directed the Secretary to advance Congress' objectives by promulgating regulations tightening the substantiation requirements for charitable deductions. It provided that, not later  than December 31, 1984, the Secretary shall prescribe regulations requiring taxpayers claiming certain deductions to do the following: (A) to obtain a qualified appraisal for the property contributed, (B) to attach an appraisal summary to the return on which such deduction is first claimed for such contribution, and (C) to include on such return such additional information (including the cost basis and acquisition date of the contributed property) as the Secretary may prescribe in such regulations.

Tax Law > Federal Tax Administration & Procedures > Administration

***HN15***[⬇] **Federal Tax Administration & Procedures, Administration**

A taxpayer's "return" for a particular year includes all IRS forms and schedules required to be filed as part of the return. Treas. Reg. § 1.6011-1.

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

***HN16***[⬇] **Nonbusiness Expenses, Charitable Contributions**

Even if Congress were thought to have intended "appraisal summary" and "return" to be mutually exclusive terms, there is nothing in the Deficit Reduction Act of 1984 (DEFRA), Pub. L. No. 98-369, § 155, 98 Stat. 691, that prohibits the Secretary from requiring that information concerning cost basis and acquisition date be included both on the appraisal summary and elsewhere on the return.

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

***HN17***[⬇] **Nonbusiness Expenses, Charitable Contributions**

The Deficit Reduction Act of 1984 (DEFRA), Pub. L. No. 98-369, § 155(a)(3), 98 Stat. 691, captioned "Appraisal summary," provides that, "for purposes of this subsection, the appraisal summary shall be in such form and include such information as the Secretary prescribes by regulations." Congress thus left the Secretary with discretion to require inclusion on Form 8283 of whatever information the Secretary reasonably deemed relevant. The Code provision governing appraisals makes the depth of the Secretary's discretion plain. I.R.C. § 170(f)(11)(C) (requiring that taxpayers obtain a qualified appraisal and attach to the return such information regarding such property and such appraisal as the Secretary may require).

Administrative Law > Judicial Review > Standards

of Review > Deference to Agency Statutory Interpretation

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

### HN18[↓] Standards of Review, Deference to Agency Statutory Interpretation

The Secretary reasonably concluded that the information the IRS needed would be most accessible to its examining agents if all of the required information appeared in the same place, namely, on the appraisal summary. The Secretary therefore issued regulations requiring that information concerning cost basis and acquisition date (as well as nine other types of information) be included in the appraisal summary included with the return. Treas. Reg. § 1.170A-13(c)(4)(ii). The court has no difficulty concluding that the Secretary's requirement to this effect was based on a permissible construction of the statute.

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

### HN19[↓] Nonbusiness Expenses, Charitable Contributions

In 2004, the year after the tax year involved in RERI Holdings I, Congress enacted the American Jobs Creation Act of 2004 (AJCA), Pub. L. No. 108-357, § 883(a), 118 Stat. 1631. The AJCA added to the Code I.R.C. § 170(f)(11), which included, in subparagraph (A)(ii)(II), a new "reasonable cause" defense for failure to comply with the regulatory reporting requirements. That subparagraph excuses failure to satisfy the reporting requirements (discussed above) if "it is shown that the failure to meet such requirements is due to reasonable cause and not to willful neglect." This statutory "reasonable cause" defense is broader than the regulatory "reasonable cause" defense promulgated previously. The latter defense is limited to situations where the taxpayer has reasonable cause "for being unable to provide the information required." Treas. Reg. § 1.170A-13(c)(4)(iv)(C)(1).

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable

Contributions

### HN20[↓] Nonbusiness Expenses, Charitable Contributions

The formulation of the I.R.C. § 170(f)(11)(A)(ii)(II) defense--referring to the existence of "reasonable cause" and the absence of "willful neglect"--resembles that appearing in numerous Code provisions that impose penalties or additions to tax, e.g., I.R.C. § 6039G(c) (flush language), I.R.C. §§ 6704(c)(1), 6652(f)-(j), 6709(c). Code provisions generally are to be interpreted so congressional use of the same words indicates an intent to have the same meaning apply. Thus, although the § 170(f)(11)(A)(ii)(II) "reasonable cause" defense relieves the taxpayer from disallowance of a deduction rather than from imposition of a penalty, the court has have construed these defenses similarly.

Tax Law > Federal Income Tax Computation > Nonbusiness Expenses > Charitable Contributions

### HN21[↓] Nonbusiness Expenses, Charitable Contributions

Reasonable cause requires that the taxpayer have exercised ordinary business care and prudence as to the challenged item. The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. Treas. Reg. § 1.6664-4(b)(1). If a taxpayer alleges reliance on the advice of a tax professional, that advice must generally be from a competent and independent advisor unburdened with a conflict of interest and not from promoters of the investment. Advice hardly qualifies as disinterested or objective if it comes from parties who actively promote or implement the transactions in question. A taxpayer advancing a reliance-on-professional-advice defense must also show that it actually relied in good faith on the advice it received. This determination "is inherently a fact-intensive one.

**Counsel: [**1]** Anson H. Asbury and Gilbert L. Carey, Jr., for petitioner.

John W. Sheffield III, Christopher D. Bradley, Jason P.

Oppenheim, and John T. Arthur, for respondent.

**Judges:** LAUBER, Judge.

**Opinion by:** LAUBER

# Opinion

MEMORANDUM OPINION

LAUBER, <u>Judge:</u> This case involves a charitable contribution deduction claimed by Oakhill Woods, LLC (Oakhill), for a donation of a conservation easement. Currently before the Court are cross-motions for partial summary **[*2]** judgment under Rule 121 as to whether Oakhill satisfied for this donation the substantiation requirements of section 1.170A-13(c), Income Tax Regs.[1] Should we answer that question in the negative, petitioner urges that this regulation is invalid.

The Internal Revenue Service (IRS or respondent) contends that the charitable contribution deduction must be denied in its entirety because Oakhill failed to attach to its 2010 Form 1065, U.S. Return of Partnership Income, a fully completed "appraisal summary" on Form 8283, Noncash Charitable Contributions. In particular, Oakhill did not disclose on that form, as was required, the "cost or adjusted basis" of the property that was the subject of the contribution. Effingham Managers, LLC (Effingham or petitioner), Oakhill's tax matters partner (TMP) and petitioner in this case, contends **[**2]** that Oakhill strictly or substantially complied with that requirement or, alternatively, had reasonable cause for failing to meet it.

Following our reasoning in <u>Belair Woods, LLC v. Commissioner</u>, T.C. Memo. 2018-159, we conclude that Oakhill did not comply, either strictly or substantially, with the regulatory requirements. And we hold that the regulation **[*3]** imposing these requirements is valid.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code) in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar, and we round all land acreage to the nearest acre.

But we find that disputes of material fact exist as to whether Oakhill had reasonable cause for its failure to supply a fully completed appraisal summary. We will accordingly grant in part respondent's motion for partial summary judgment and deny petitioner's motion for partial summary judgment.

Background

There is no dispute as to the following facts, which are drawn from the parties' motion papers and the attached declarations and exhibits. Oakhill had its principal place of business in Georgia when the petition was filed.

A. <u>The Easement</u>

Before August 2007 Augusta Woodlands, LLC (Augusta), the subsidiary of a large paper-products company, owned thousands of acres of undeveloped forest property in Effingham County, Georgia. The financial crisis that burgeoned in 2007 took a toll on both companies. This prompted Augusta to liquidate assets.

On August **[**3]** 1, 2007, Augusta sold 1,895 acres of forest property to HRH Investments, LLC (HRH), a Georgia entity owned by real estate developers. The property sold comprised two tracts. HRH purchased the first tract, consisting of 1,490 acres (Tract 1), for approximately $3,881,200, or $2,605 per acre. HRH **[*4]** purchased the second tract, consisting of 405 acres (Tract 2), for $1,008,736, or $2,491 per acre. As the crow flies, the two tracts are about seven miles apart.

HRH and its principals allegedly believed that these tracts held potential for residential development. However, any near-term development plans became illusory as the 2008-2009 financial crisis engulfed the Nation, with particular severity on the housing market in the Southeastern States. HRH and its principals accordingly considered whether they could wring economic value out of their real estate investment in some other way.

Oakhill is a Georgia limited liability company, formed in October 2008, that has operated at all times as a partnership for Federal income tax purposes. Effingham, Oakhill's TMP, is related to HRH by virtue of having partners in common. On December 1, 2009, HRH contributed to Oakhill 388 acres of Tract 2 in exchange **[**4]** for an ownership interest in Oakhill.

On December 7, 2010, slightly more than one year later,

Oakhill executed a deed of conservation easement (Easement) with the Georgia Land Trust (GLT), a "qualified organization" for purposes of section 170(h)(3). The deed was recorded that same day. Oakhill delegated many details regarding this transaction to Forever Forests, LLC (Forever Forests), a consulting firm specializing in structuring **[*5]** conservation easements to maximize tax benefits. Forever Forests advised Oakhill on the terms of the Easement, as well as its tax filings with respect thereto.

The Easement covers 379 of the 388 acres that HRH had conveyed to Oakhill. The nine acres excluded from the Easement were reserved by Oakhill for possible future development. The Easement generally prohibits residential and commercial development of the conserved land, reciting as its conservation purposes the preservation of "significant open space, forest, agricultural, watershed, wildlife and plant habitat features."[2]

B. Oakhill's Tax Return

Oakhill timely filed Form 1065 for its taxable year ending December 31, 2010. On that return it claimed for its donation a charitable contribution deduction of $7,949,000 (or $20,975 per acre covered by the easement).

 **[*6]** Oakhill included with its return a copy of an appraisal by David R. Roberts, which relied on the "before and after method" to value the easement. Mr. Roberts noted that the land was zoned "agricultural residential," with a five-acre minium residential lot size, and that "approximately 53% * * * [was] wetlands area." Although the tract had no existing water or sewer facilities, he opined that, "if the site has sewer treatment available, * * * [sites could] be as small as 1/4-acre with

_____

[2] HRH or its affiliates contributed portions of Tract 1 (or portions of other tracts in Effingham County) to various LLCs, for each of which Effingham served as TMP. Each LLC in turn granted a conservation easement to GLT. The IRS has challenged the charitable contribution deductions claimed by the LLCs for these other donations, and those cases are currently pending in this Court. See Belair Woods, LLC v. Commissioner, T.C. Memo. 2018-159; Red Oak Estates, LLC v. Commissioner, T.C. Dkt. No. 13659-17; Cottonwood Place, LLC v. Commissioner, T.C. Dkt. No. 14076-17; Englewood Place, LLC v. Commissioner, T.C. Dkt. No. 1560-18; Maple Landing, LLC v. Commissioner, T.C. Dkt. No. 1996-18; Riverside Place, LLC v. Commissioner, T.C. Dkt. No. 2154-18; Village at Effingham, LLC v. Commissioner, T.C. Dkt. No. 2426-18 **[**5]** .

county approval." Mr. Roberts acknowledged that "the economic downturn of 2008 ha[d] affected the subject market area" and that "several constructed residential subdivisions in the market area * * * [had] been foreclosed upon." But he expressed optimism that the land was "prime for residential development" and "would be one of the first tracts utilized for this type of development" once the market recovered.

Assuming that "219 sites could be developed **[**6]** with the use of a private sewage system," Mr. Roberts concluded that the highest and best use of the 379 acres was a 219-site high-density residential development, which would supposedly make the land worth $8,535,000 on a "before" basis. The placement of the easement allegedly reduced that value to $586,000 (including $9,000 of enhancement to the value of the reserved nine acres). Subtracting the "after" value from the before value, Mr. Roberts determined a value of $7,949,000 for the easement.  **[*7]** Oakhill included with its return a Form 8283 executed by Mr. Roberts and GLT. Form 8283 directs the taxpayer to provide the IRS with certain information regarding noncash charitable contributions. When a taxpayer donates property (other than publicly traded securities) valued in excess of $5,000, the taxpayer must provide: (1) a description of the donated property, (2) a brief summary of its physical condition, (3) its appraised fair market value (FMV), (4) the date the property was acquired by the donor, (5) the manner of acquisition, and (6) the donor's "cost or adjusted basis." The instructions to the form state that, "[i]f you have reasonable cause for not providing the information * * **[**7]** * , attach an explanation so your deduction will not be automatically disallowed."

Oakhill allegedly relied on Forever Forests to "manage * * * the completion of IRS Form 8283," believing that Forever Forests had "obtained advice from legal counsel regarding certain aspects of Form 8283, including completion of line 5(f) * * * which requests the 'cost or adjusted basis' in the donated property."

In the relevant boxes on Form 8283, Oakhill wrote "see attachment" and appended a three-page letter. The letter attached to the Form 8283 stated that: (1) the donated property was a conservation easement, (2) the easement covered 379 acres of undeveloped land, (3) the easement had an appraised FMV of $7,949,000, and (4) the parcel **[*8]** covered by the easement was acquired on August 1, 2007, by "purchase/exchange." With respect to "cost or adjusted basis" the letter stated:

   A declaration of the taxpayer's basis in the property

is not included in * * * the attached Form 8283 because of the fact that the basis of the property is not taken into consideration when computing the amount of the deduction. Furthermore, the taxpayer has a holding period in the property in excess of 12 months and the property **[\*\*8]** further qualifies as "capital gain property."

Oakhill alleges that it completed Form 8283 in this way in reliance on the advice of Forever Forests and of the certified public accountant (CPA) who prepared the return.[3]

The IRS selected Oakhill's 2010 return for examination and sent petitioner an information document request. In December 2014 the IRS issued petitioner a summary report proposing to disallow Oakhill's claimed deduction because (inter alia) it had not included on its Form 8283 information concerning its "cost or adjusted basis." Within 90 days of receiving the summary report Oakhill's CPA allegedly "provided the IRS with the cost basis information necessary to supplement * * * the Form 8283."

 **[\*9]** On September 19, 2017, the IRS issued petitioner a timely notice of final partnership administrative adjustment (FPAA) disallowing the claimed deduction because Oakhill failed to meet "all of the requirements of * * * Section 170." The FPAA alternatively determined that, if any deduction were allowable, Oakhill had not established that the FMV of the easement "exceeded $0." The FPAA determined a 40% "gross valuation misstatement" penalty under section 6662(a) and (h) and (in the alternative) a 20% accuracy-related **[\*\*9]** penalty under section 6662(a).

In December 2017 petitioner timely petitioned this Court for readjustment of the partnership items under section 6226(a). Respondent filed a motion for partial summary judgment on May 18, 2018. On December 12, 2018, petitioner filed a cross-motion for partial summary judgment contending (among other things) that the regulations requiring inclusion on Form 8283 of information concerning cost or adjusted basis "are invalid * * * because they do not give effect to the unambiguous language of the statute." We have jurisdiction under section 6226(f).[4]

---

[3] The final sentence of the letter evidently refers to section 170(e)(1)(A), which requires that the amount of any deduction be reduced by "the amount of gain which would not have been long-term capital gain" if the property had instead been sold.

[4] In his motion for partial summary judgment respondent urges

 **[\*10]** Discussion

**HN1**[⬆] The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002). The parties agree on all material facts relating to the question whether Oakhill strictly or substantially complied with the regulatory requirements governing substantiation of charitable contribution **[\*\*10]** deductions. We conclude that this issue, as well as petitioner's challenge to the regulation's validity, is appropriate for summary adjudication.

**HN2**[⬆] Section 170(a)(1) allows as a deduction any charitable contribution made within the taxable year. If the taxpayer makes a charitable contribution of property  **[\*11]** other than money, the amount of the contribution is generally equal to the FMV of the property at the time of the contribution. See sec. 1.170A-1(c)(1), Income Tax Regs.

**HN3**[⬆] Where a contribution of property (other than publicly traded securities) is valued in excess of $5,000, the taxpayer must "obtain[] a qualified appraisal of such

---

an alternative ground for disallowing the charitable contribution deduction--namely, that a defect in the Easement's "judicial extinguishment" provision prevents the Easement from satisfying the requirement, set forth in section 170(h)(5)(A), that the conservation purposes be "protected in perpetuity." See PBBM-Rose Hill, Ltd. v. Commissioner, 900 F.3d 193 (5th Cir. 2018) (disallowing a charitable contribution deduction for a conservation easement on this ground); Coal Prop. Holdings, LLC v. Commissioner, 153 T.C. 126, 2019 U.S. Tax Ct. LEXIS 26 (Oct. 28, 2019) (same). In its cross-motion for partial summary judgment, petitioner contends that the regulation governing this issue, sec. 1.170A-14(g)(6), Income Tax Regs., "is an invalid, arbitrary and capricious regulation promulgated without explanation or other evidence of reasoned decision-making as required by SEC v. Chenery Corp., 332 U.S. 194, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947)." Challenges to the validity of that regulation are currently pending before this Court in a host of conservation easement cases. See, e.g., Oakbrook Land Holdings, LLC v. Commissioner, T.C. Dkt. No. 5444-13; Briarcreek Pres. LLC v. Commissioner, T.C. Dkt. No. 1547-18; Englewood Place, LLC v. Commissioner, T.C. Dkt. No. 1560-18. Given our disposition, we will defer ruling on respondent's alternative ground for disallowance at this time.

property and attach[] to the return * * * such information regarding such property and such appraisal as the Secretary may require." Sec. 170(f)(11)(C). The required information includes "an appraisal summary" that must be attached "to the return on which such deduction is first claimed for such contribution." Deficit Reduction Act of 1984 (DEFRA), Pub. L. No. 98-369, sec. 155(a)(1), 98 Stat. at 691; see sec. 1.170A-13(c)(2), Income Tax Regs. The IRS has prescribed Form 8283 to be used as the "appraisal summary." Jorgenson v. Commissioner, T.C. Memo. 2000-38, 79 T.C.M. (CCH) 1444, 1450. Failure to comply with this requirement generally precludes a deduction. See sec. 170(a)(1) ("A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary."). **[\*\*11]**

In his motion for partial summary judgment, respondent contends that Oakhill's claimed deduction should be disallowed because it declined to report its "cost or adjusted basis" on Form 8283 and thus failed to attach to its return a properly **[\*12]** completed appraisal summary. Oakhill contends that it strictly (or at least substantially) complied with the applicable regulation. We rejected that argument on virtually identical facts in Belair Woods, and we reject that argument again here. Accord, Loube v. Commissioner, T.C. Memo. 2020-3, at *17-*23. Petitioner alternatively contends that the regulation governing reporting of cost basis is invalid or (if it is valid) that Oakhill had reasonable cause for failing to comply with it. We address these arguments in turn.

A. Regulatory Reporting Requirements

1. Strict Compliance

HN4[⬆] The regulation requires the donor to "[a]ttach a fully completed appraisal summary" to the tax return on which the charitable contribution deduction is first claimed. Sec. 1.170A-13(c)(2)(i)(B), Income Tax Regs. A fully completed appraisal summary must include the cost or adjusted basis of the donated property. Id. subpara. (4)(ii)(E). "If a taxpayer has reasonable cause for being unable to provide the information required * * * (relating to the manner of acquisition and **[\*\*12]** basis of the contributed property), an appropriate explanation should be attached to the appraisal summary." Id. subdiv. (iv)(C)(1). "The taxpayer's deduction will not be disallowed simply because of the inability (for reasonable cause) to provide these items of information." Ibid.

**[\*13]** We conclude that Oakhill did not strictly comply with the regulatory requirements. Oakhill did not report its cost basis as the regulation requires and as Form 8283 directs. And the explanation Oakhill attached to that form, far from showing that it was unable to provide this information, simply asserted that the information was not necessary. In effect, Oakhill asserted that taxpayers are free to ignore the requirement that they report cost basis. Asserting that one may ignore a requirement does not constitute strict compliance with it.

Petitioner contends that Oakhill omitted basis information from its Form 8283 because it did not know what basis to report. On the facts here, petitioner says, the term "basis" might refer (for example) to the price HRH paid for Tract 2, the adjusted cost basis of the 388 acres that HRH contributed to Oakhill, or the adjusted cost basis of the 379 acres that Oakhill subjected **[\*\*13]** to the easement. Because the term "basis" in the context of a conservation easement is supposedly ambiguous, petitioner contends that Oakhill should be excused from supplying this information.

Even if petitioner's premise were correct, its conclusion does not follow from its premise. HN5[⬆] The regulation excuses the omission of basis information only if reasonable cause is established in the explanation attached to the appraisal summary. See sec. 1.170A-13(c)(4)(iv)(C)(1), Income Tax Regs.; see also Friedman **[\*14]** v. Commissioner, T.C. Memo. 2010-45, 99 T.C.M. (CCH) 1175, 1177. In its attachment to the appraisal summary Oakhill did not offer the explanation it now advances. Nor did it disclose what its basis would be under the alternative approaches it mentions. Rather, it declined to disclose basis information of any sort on the theory that the IRS did not need this information.

Petitioner alternatively contends that Oakhill cured its initial omission by supplying cost basis information during the IRS audit. The regulation provides that a deduction will not be disallowed for failure to attach an appraisal summary if the donor complies with an IRS request to submit a Form 8283 within 90 days. Sec. 1.170A-13(c)(4)(iv)(H), Income Tax Regs. (providing that a deduction will not be disallowed "[i]f such a request is made [by the **[\*\*14]** IRS] and the donor complies with the request"). Petitioner asserts that this regulation entitles it to relief because its CPA provided basis information to the IRS after being informed that the IRS proposed to deny Oakhill's deduction.

We are not persuaded. By its terms the regulation petitioner cites does not apply here. Oakhill did not "fail[]

to attach to * * * [its] return an appraisal summary." Ibid. Rather, Oakhill included in its return an intentionally incomplete Form 8283. And the IRS did not "request" that Oakhill cure the omission of which it was guilty. Ibid. Rather, the IRS informed Oakhill that its deduction [*15] might be denied, and Oakhill unilaterally supplied basis information in an effort to avoid that outcome.

Oakhill supplied the relevant information three years after its return was filed and only upon learning that the IRS examination might have an unhappy ending. The regulation creates a prophylactic rule designed to provide the IRS with information to help it decide whether to commence an examination. This requirement would be meaningless if a taxpayer could cure noncompliance ex post facto, after learning that an examination had begun and was headed toward an adverse [**15] outcome.

In sum, Oakhill did not provide cost basis information on its Form 8283, and its attached explanation did not show that it was unable to provide such information. We accordingly conclude here, as we did in Belair Woods, at *11-*14, that Oakhill's appraisal summary did not strictly comply with the regulation.

2. Substantial Compliance

HN6[⬆] In Bond v. Commissioner, 100 T.C. 32, 41 (1993), we held that some of the reporting requirements in section 1.170A-13, Income Tax Regs., while "helpful to respondent in the processing and auditing of returns," are "directory and not mandatory." Thus, in appropriate circumstances, these requirements can be satisfied by substantial, rather than by literal, compliance. Bond, 100 T.C. at 42. "The [*16] doctrine of substantial compliance is designed to avoid hardship in cases where a taxpayer does all that is reasonably possible, but nonetheless fails to comply with the specific requirements of a provision." Durden v. Commissioner, T.C. Memo. 2012-140, 103 T.C.M. (CCH) 1762, 1763.

HN7[⬆] Substantial compliance may be shown where the taxpayer "provided most of the information required" or made omissions "solely through inadvertence." Hewitt v. Commissioner, 109 T.C. 258, 265 n.10 (1997), aff'd without published opinion, 166 F.3d 332 (4th Cir. 1998). But in order to substantially comply, the taxpayer must satisfy all reporting requirements that "relate 'to the substance or essence of the statute.'" Bond, 100 T.C. at 41 (quoting Taylor v. Commissioner, 67 T.C. 1071, 1077 (1977)); see Estate of Evenchik v. Commissioner, T.C. Memo. 2013-34, 105 T.C.M. (CCH) 1231, 1234 (declining to excuse [**16] reporting errors that go to

the "essential requirements of the governing statute" (quoting Estate of Clause v. Commissioner, 122 T.C. 115, 122 (2004))). In assessing whether Oakhill substantially complied with the regulation in question here, we consider whether it provided sufficient information to enable the IRS "to evaluate the[] reported contributions, as intended by Congress." Smith v. Commissioner, T.C. [*17] Memo. 2007-368, 94 T.C.M. (CCH) 574, 586, aff'd, 364 F. App'x 317 (9th Cir. 2009).[5]

In enacting DEFRA's heightened reporting requirements, Congress aimed to give the IRS tools that would enable it to identify inflated charitable contribution deductions. See RERI Holdings I, LLC v. Commissioner, 149 T.C. 1, 16-17 (2017), aff'd sub nom. Blau v. Commissioner, 924 F.3d 1261 (D.C. Cir. 2019). Just before the enactment of DEFRA, the IRS had warned that taxpayers were using inflated appraisals to claim deductions that were several multiples of the amounts actually paid for donated property. See, e.g., Roscoe L. Egger, "Warning: Abusive Tax Shelters Can Be Hazardous," 68 A.B.A. J. 1674, 1676 (1982). The Senate Finance Committee took note of this fact, stating that, "in recent years, opportunities to offset income through inflated valuations of donated property have been increasingly exploited by tax shelter promoters." S. Prt. No. 98-169 (Vol. 1), at 444 (S. Print 1984). Citing "the subjective nature of valuation," [**17] the Committee expressed concern that "taxpayers may continue to play the 'audit [*18] lottery' and claim excessive charitable deductions." Ibid. Congress intended that DEFRA's new substantiation regime would "alert the Commissioner to potential overvaluations of contributed property and thus deter taxpayers from claiming excessive deductions." RERI Holdings I, 149 T.C. at 14.

HN8[⬆] The requirement to disclose "cost or adjusted basis" when that information is reasonably obtainable is necessary to facilitate the Commissioner's efficient identification of overvalued property. The cost of property typically corresponds to its FMV when the taxpayer acquired it. See sec. 1012; Phillips Petroleum Co. v. Commissioner, 104 T.C. 256, 308 (1995) ("Actual

---

[5] As noted infra p. 27, Congress in 2004 added to the Code section 170(f)(11)(A)(ii)(II), which sets forth a statutory "reasonable cause" defense for failure to comply with the reporting requirements discussed above. "The substantial compliance doctrine has continuing but limited application in a post-section 170(f)(11) world." Rothman v. Commissioner, T.C. Memo. 2012-163, 103 T.C.M. (CCH) 1864, 1868, supplemented and vacated in part by T.C. Memo. 2012-218.

sales are generally the best evidence of fair market value."). When a taxpayer claims a charitable contribution deduction for recently purchased property, a wide gap between cost basis and claimed value raises a red flag suggesting that the return merits examination. Unless the taxpayer complies with the regulatory requirement that he disclose his cost basis and the date and manner of acquiring the property, the Commissioner will be deprived of an essential tool that Congress intended him to have.

For these reasons, we concluded in <u>RERI Holdings I</u>, 149 T.C. at 16-17, that the taxpayer did not **[\*\*18]** substantially comply with the reporting requirements when it failed to disclose "cost or adjusted basis" on its Form 8283. The taxpayer there had claimed a deduction reflecting a value 11 times higher than its basis in property **[\*19]** it had purchased just 17 months earlier. We noted that this "significant disparity * * * , had it been disclosed, would have alerted respondent to a potential overvaluation." <u>Id.</u> at 17. Because the failure to supply cost basis information "prevented the appraisal summary from achieving its intended purpose," we held that this failure could not be excused on grounds of substantial compliance. <u>Id.</u> at 16.

Here, Oakhill acquired the land in question by contribution from HRH, a related party. HRH had acquired Tract 2, comprising 405 acres, in August 2007 for $1,008,736, reflecting an average per-acre price of $2,491. In December 2009 HRH contributed 388 of those acres to Oakhill, and in December 2010 Oakhill granted an easement over 379 of those remaining acres to GLT, valuing the easement at $7,949,000. That translates to an asserted per-acre value of $20,975 for the Easement alone, ignoring the value of the retained land.

Oakhill thus took the position that the 379 acres had appreciated **[\*\*19]** by more than 800% during the previous 3-1/2 years amid the worst real estate crisis since the Great Depression. This is precisely the sort of information that Congress wished the IRS to have, and Oakhill's refusal to supply this information contravenes the "essential requirements of the governing statute." <u>Estate of Evenchik</u>, 105 T.C.M. (CCH) at 1234 (quoting <u>Estate of Clause</u>, 122 T.C. at 122); <u>see</u> <u>Bond</u>, **[\*20]** 100 T.C. at 41; <u>Alli v. Commissioner</u>, T.C. Memo. 2014-15, 107 T.C.M. (CCH) 1082, 1094 *HN9*[⬆] ("[C]ourts have routinely declined to apply the substantial compliance doctrine where * * * entire categories of required information are omitted.").

Petitioner urges that Oakhill effectively disclosed its cost basis elsewhere on its Form 1065 for 2010. Specifically, petitioner contends that Oakhill supplied information from which its cost basis could be derived on Schedule L, Balance Sheets per Books, on various schedules included within the return, or in the attached appraisal, which included a history of Tract 2.

We are not persuaded. *HN10*[⬆] The regulation requires that "[a]n appraisal summary shall include" information concerning basis. Sec. 1.170A-13(c)(4)(ii)(E), Income Tax Regs. The explicit disclosure of basis on Form 8283 is essential in alerting the Commissioner as to whether (and to what extent) further investigation may be needed. <u>See Knight-Ridder Newspapers, Inc. v. United States</u>, 743 F.2d 781, 796 (11th Cir. 1984) (refusing to excuse as harmless error a taxpayer's failure **[\*\*20]** to make an election on the designated IRS form because "[t]he Commissioner needs to know that an election has been made in order to determine whether an audit is necessary in the first place and what its scope should be").

 **[\*21]** The IRS reviews millions of returns each year for audit potential, and the disclosure of cost basis on the Form 8283 itself is necessary to make this process manageable. Oakhill's 2010 tax return was 35 pages long, and the attached appraisal (excluding addenda) was 143 pages long. *HN11*[⬆] Where the taxpayer states on Form 8283 that basis information will not be provided, revenue agents cannot be required to sift through hundreds of pages of complex returns looking for possible clues about what the taxpayer's cost basis might be. <u>Cf. Durden</u>, 103 T.C.M. (CCH) at 1764 ("Nothing in the statute * * * requires respondent to look beyond the written acknowledgment when on its face the acknowledgment fails to provide the information required to substantiate a charitable contribution deduction."). If cost basis is not explicitly disclosed where it is required to be disclosed, the Commissioner will be handicapped in identifying suspicious charitable deductions and deterring taxpayers from "continu[ing] to play the **[\*\*21]** 'audit lottery.'" S. Prt. No. 98-169 (Vol. 1), <u>supra</u> at 444.

Finally, this is not a case where the taxpayer did "all that is reasonably possible," <u>Durden</u>, 103 T.C.M. (CCH) at 1763, or omitted information "solely through inadvertence," <u>Hewitt</u>, 109 T.C. at 265 n.10. Oakhill contacted Forever Forests about preparing the Form 8283, specifically with reference to reporting its "cost or adjusted basis." Allegedly in reliance on the advice it received, Oakhill declined **[\*22]** to report its cost or

adjusted basis, asserting in an attachment to its Form 8283 that this information was unnecessary because "basis * * * is not taken into consideration when computing the amount of the deduction." This was not a case of inadvertent omission, but of a conscious election not to supply the required information. For all these reasons, we hold that Oakhill did not comply, literally or substantially, with the regulatory reporting requirements. Accord, Belair Woods, at *14-*21; Loube, at *17-*23.

## B. Challenge to the Regulation's Validity

On December 12, 2018, two months after we issued our opinion in Belair Woods, petitioner filed a cross-motion for partial summary judgment challenging the validity of **HN12**[⬆] section 1.170A-13(c)(4)(ii)(D) and (E), Income Tax Regs. These provisions set forth the regulatory requirements (discussed above) that an appraisal summary "shall include" information **[\*\*22]** concerning the manner in which the donor acquired the donated property, the date on which he acquired it, and the "cost or other basis of the property adjusted as required by section 1016." Ibid. Petitioner contends that these provisions "are invalid under Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984), because they do not give effect to the unambiguous language of the statute."

 **[\*23]** **HN13**[⬆] When considering a challenge to the validity of a regulation, we generally look to the two-part test established by Chevron. The first prong of that test asks "whether Congress has directly spoken to the precise question at issue." Id. at 842. If Congress has not spoken to the precise question at issue, the second prong requires the Court to determine whether the regulation "is based on a permissible construction of the statute." Id. at 843. Petitioner contends that Congress "has directly spoken to the precise question at issue," id. at 842, and that the regulation is invalid because it contravenes the statute's "unambiguous language."

The statute on which petitioner relies is a provision of DEFRA, enacted by Congress in 1984. See supra p. 11. The Senate Finance Committee expressed Congress' concern that "inflated valuations of donated property have been increasingly exploited by tax shelter promoters." S. **[\*\*23]** Prt. No. 98-169 (Vol. 1), supra at 444. The Committee believed that "stronger substantiation and overvaluation provisions should be made applicable to charitable contributions of property." Ibid. DEFRA accordingly added to the Code a number of new enforcement provisions.

**HN14**[⬆] DEFRA section 155(a), which was not codified, directed the Secretary to advance Congress' objectives by promulgating regulations tightening the substantiation requirements for charitable deductions. It provided that, "[n]ot later **[\*24]** than December 31, 1984, the Secretary shall prescribe regulations" requiring taxpayers claiming certain deductions to do the following:

> (A) to obtain a qualified appraisal for the property contributed,
> (B) to attach an appraisal summary to the return on which such deduction is first claimed for such contribution, and
> (C) to include on such return such additional information (including the cost basis and acquisition date of the contributed property) as the Secretary may prescribe in such regulations.

Petitioner contends that Congress spoke directly "to the precise question at issue," Chevron, 467 U.S. at 842, when it directed the Secretary to issue regulations requiring that information concerning cost basis and acquisition date be "include[d] on such **[\*\*24]** return," DEFRA sec. 155(a)(1)(C) (emphasis added). The Secretary thereafter issued regulations requiring that such information (as well as nine other types of information) be included in the appraisal summary attached to the return. See sec. 1.170A-13(c)(4)(ii), Income Tax Regs. Petitioner asserts that the Secretary, by so doing, violated Congress' explicit mandate.

This argument is unpersuasive for at least three reasons. First, **HN15**[⬆] a taxpayer's "return" for a particular year includes all IRS forms and schedules required to be filed as part of the return. See sec. 1.6011-1, Income Tax Regs. The Form 8283, comprising the appraisal summary, was an essential component of petitioner's return for 2010. By requiring inclusion of information concerning cost basis and **[\*25]** acquisition date on the Form 8283, the Secretary complied with Congress' mandate that such data be "include[d] on such return." DEFRA sec. 155(a)(1)(C).

Second, **HN16**[⬆] even if Congress were thought to have intended "appraisal summary" and "return" to be mutually exclusive terms, there is nothing in DEFRA section 155 that prohibits the Secretary from requiring that information concerning cost basis and acquisition date be included both on the appraisal summary and elsewhere on the return. Petitioner reads into DEFRA section 155(a)(1)(C) a negative pregnant that is wholly unjustified by the text.

**HN17**[⬆] Third, DEFRA section 155(a)(3) **[**25]** , which petitioner fails to cite, wholly undermines its argument. That paragraph, captioned "Appraisal summary," provides that, "[f]or purposes of this subsection, the appraisal summary shall be in such form and include such information as the Secretary prescribes by regulations." (Emphasis added.) Congress thus left the Secretary with discretion to require inclusion on Form 8283 of whatever information the Secretary reasonably deemed relevant. See Blau, 924 F.3d at 1270 ("Though the Congress left it to the discretion of the Secretary * * * to impose additional reporting requirements, the Congress specifically identified the basis and the date of acquisition as the bare minimum that a taxpayer must provide."). The Code provision governing appraisals makes the depth of the Secretary's discretion plain. See sec. 170(f)(11)(C) (requiring **[*26]** that taxpayers obtain a qualified appraisal and "attach[] to the return * * * such information regarding such property and such appraisal as the Secretary may require"). For these reasons we reject petitioner's contention that the regulation violates Chevron step one on the theory that it contravenes "the unambiguous language of the statute."

It seems equally obvious that the regulation satisfies Chevron step two, which requires that the regulation be "based on a permissible construction of the statute." Chevron, 467 U.S. at 843. When enacting DEFRA Congress decided that the IRS needed disclosure of information--specifically including information concerning cost basis and acquisition date of donated property--in order to combat claims of "excessive charitable deductions" by taxpayers seeking to "play 'the audit lottery.'" S. Prt. No. 98-169 (Vol. 1), supra at 444. Congress accordingly directed the Secretary to issue regulations requiring that taxpayers claiming certain types of charitable deductions attach to their returns an appraisal summary, which "shall be in such form and include such information as the Secretary prescribes by regulations." DEFRA sec. 155(a)(3).

**HN18**[⬆] The Secretary reasonably concluded that the information the IRS needed would be most **[**26]** accessible to its examining agents if all of the required information appeared in the same place, namely, on the appraisal summary. The Secretary **[*27]** therefore issued regulations requiring that information concerning cost basis and acquisition date (as well as nine other types of information) be included in the appraisal summary included with the return. See sec. 1.170A-13(c)(4)(ii), Income Tax Regs. We have no difficulty concluding that the Secretary's requirement to this effect was "based on a permissible construction of the

statute." Chevron, 467 U.S. at 843. We will accordingly deny petitioner's cross-motion for summary judgment insofar as it contends that the regulation is invalid.[6]

C. Reasonable Cause Defense

**HN19**[⬆] In 2004, the year after the tax year involved in RERI Holdings I, Congress enacted the American Jobs Creation Act of 2004 (AJCA), Pub. L. No. 108-357, sec. 883(a), 118 Stat. at 1631. The AJCA added to the Code section 170(f)(11), which included, in subparagraph (A)(ii)(II), a new "reasonable cause" defense for failure to comply with the regulatory reporting requirements. That subparagraph **[*28]** excuses failure to satisfy the reporting requirements **[**27]** discussed above if "it is shown that the failure to meet such requirements is due to reasonable cause and not to willful neglect." This statutory "reasonable cause" defense is broader than the regulatory "reasonable cause" defense promulgated previously. As noted supra p. 12-13, the latter defense is limited to situations where the taxpayer has reasonable cause "for being unable to provide the information required." Sec. 1.170A-13(c)(4)(iv)(C)(1), Income Tax Regs.

**HN20**[⬆] The formulation of the section 170(f)(11)(A)(ii)(II) defense--referring to the existence of "reasonable cause" and the absence of "willful neglect"--resembles that appearing in numerous Code provisions that impose penalties or additions to tax. See, e.g., secs. 6039G(c) (flush language), 6704(c)(1), 6652(f)-(j), 6709(c). "Code provisions generally are to be interpreted so congressional use of the same words indicates an intent to have the same meaning apply." Elec. Arts, Inc., 118 T.C. at 241. Thus, although the section 170(f)(11)(A)(ii)(II) "reasonable cause" defense relieves the taxpayer from disallowance of a deduction rather than from imposition of a penalty, we have construed these defenses similarly. See Alli, 107 T.C.M. (CCH) at 1096; Crimi v. Commissioner, T.C. Memo.

---

[6] This conclusion is consistent with the conclusion reached in previous unpublished orders of this Court. See River's Edge Landing, LLC v. Commissioner, T.C. Dkt. No. 1111-18 (order dated Dec. 10, 2019); Ogeechee River Pres., LLC v. Commissioner, T.C. Dkt. No. 2771-18 (order dated Dec. 10, 2019); Riverpointe at Ogeechee, LLC v. Commissioner, T.C. Dkt. No. 4011-18 (order dated Dec. 10, 2019); Dasher's Bay at Effingham, LLC v. Commissioner, T.C. Dkt. No. 4078-18 (order dated Dec. 10, 2019). In Mohamed v. Commissioner, T.C. Memo. 2012-152, 103 T.C.M. (CCH) 1814, 1818-1819, we sustained the validity of sec. 1.170A-13(c), Income Tax Regs., against a challenge directed to a different aspect of the regulatory requirements.

2013-51, 105 T.C.M. (CCH) 1330, 1353.

 [*29]  *HN21*[⬆] "Reasonable cause requires that the taxpayer have exercised ordinary business care and prudence as to the challenged item." Crimi, 105 T.C.M. (CCH) at 1353 (citing United States v. Boyle, 469 U.S. 241, 105 S. Ct. 687, 83 L. Ed. 2d 622 (1985)). "The determination **[**28]** of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs.

If a taxpayer alleges reliance on the advice of a tax professional, that "advice must generally be from a competent and independent advisor unburdened with a conflict of interest and not from promoters of the investment." Mortensen v. Commissioner, 440 F.3d 375, 387 (6th Cir. 2006), aff'g T.C. Memo. 2004-279; see Gustashaw v. Commissioner, 696 F.3d 1124, 1139 (11th Cir. 2012), aff'g T.C. Memo. 2011-195. "Advice hardly qualifies as disinterested or objective if it comes from parties who actively promote or implement the transactions in question." Stobie Creek Invs. LLC v. United States, 608 F.3d 1366, 1382 (Fed. Cir. 2010). A taxpayer advancing a reliance-on-professional-advice defense must also show that it actually relied in good faith on the advice it received. See Alli, 107 T.C.M. (CCH) at 1096; see also Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 98-99 (2000), aff'd, 299 F.3d 221 (3d Cir. 2002). This determination "is  **[*30]** inherently a fact-intensive one." Alli, 107 T.C.M. (CCH) at 1096 (quoting Crimi v. Commissioner, 105 T.C.M. (CCH) at 1353).

Petitioner contends that Oakhill, when preparing its Form 8283, reasonably relied on advice from the CPA who prepared its return and from Forever Forests, which allegedly relayed advice from an outside law firm. We conclude that resolution of this issue will require us to address several questions as to which genuine disputes of material fact currently appear to exist. These questions include whether Forever **[**29]** Forests was a "tax professional"; whether Forever Forests was "a competent and independent advisor unburdened with a conflict of interest," see Mortensen, 440 F.3d at 387; whether Oakhill could reasonably rely on legal advice relayed to it indirectly; whether petitioner's CPA was a competent tax professional who provided tax advice independent of the advice supplied by Forever Forests; and whether Oakhill actually relied in good faith on whatever advice it received.

To reflect the foregoing,

An order will be issued granting in part respondent's motion for partial summary judgment and denying petitioner's motion for partial summary judgment.

---

**End of Document**