# EXHIBIT F

 Cited
As of: August 7, 2020 1:49 PM Z

# Maple Landing, LLC v. Comm'r

United States Tax Court

July 9, 2020, Filed

Docket No. 1996-18

**Reporter**
T.C. Memo 2020-104 *; 2020 Tax Ct. Memo LEXIS 105 **

MAPLE LANDING, LLC, EFFINGHAM MANAGERS, LLC, TAX MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent

**Disposition:** An order will be issued granting respondent's motion for partial summary judgment and denying petitioner's cross-motion.

to supply cost basis violated the essence of the statute. This failure supplied an independent ground for denial of its charitable contribution deduction.

**Outcome**
Respondent IRS's motion for partial summary judgment granted. Petitioner's cross-motion denied.

## Core Terms

easement, deed, charitable, grantee's, extinguishment, perpetuity, donor, donated, cross-motion, invalid, partial

## Case Summary

**Overview**
HOLDINGS: [1]-Petitioner taxpayer's charitable contribution deduction for conservation easement was denied in its entirety because the conservation purpose underlying the easement was not protected in perpetuity as required by I.R.C. § 170(h)(5)(A). Because the grantee's share of the proceeds was improperly reduced by carve-outs both for donor improvements and for claims against the donor, the deed's judicial extinguishment provisions did not satisfy the regulatory requirements of Treas. Reg. § 1.170A-14(g)(6); [2]-Taxpayer also did not attach to its return, as Treas. Reg. § 1.170A-13(c)(2)(i)(B) required, a fully completed appraisal summary on Form 8283 that reported its cost basis. Nor did it substantially comply because its failure

## LexisNexis® Headnotes

Tax Law > Federal Tax Administration & Procedures > Summary Judgment > Standards for Summary Judgment

Tax Law > Federal Tax Administration & Procedures > Summary Judgment

*HN1*[ ] **Summary Judgment, Standards for Summary Judgment**

The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. The Tax Court can grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. U.S. Tax Ct. R. 121(b).

Tax Law > ... > Deductions > Charitable

Deductions > Charitable, Public & Religious Transfers

**HN2[ ] Charitable Deductions, Charitable, Public & Religious Transfers**

The Tax Code generally restricts a taxpayer's charitable contribution deduction for the donation of an interest in property which consists of less than the taxpayer's entire interest in such property. I.R.C. § 170(f)(3)(A). But there is an exception for a "qualified conservation contribution." I.R.C. § 170(f)(3)(B)(iii), (h)(1). For the donation of an easement to be a qualified conservation contribution, the conservation purpose must be protected in perpetuity. I.R.C. § 170(h)(5)(A).

Tax Law > ... > Deductions > Charitable Deductions > Charitable, Public & Religious Transfers

**HN3[ ] Charitable Deductions, Charitable, Public & Religious Transfers**

The regulations set forth detailed rules for determining whether the "protected in perpetuity" requirement of I.R.C. § 170(h)(5)(A) is met. There are rules governing the mandatory division of proceeds in the event the property is sold following a judicial extinguishment of the easement. Treas. Reg. § 1.170A-14(g)(6). The regulations recognize that a subsequent unexpected change in the conditions surrounding the donated property can make impossible or impractical the continued use of the property for conservation purposes. Despite that possibility, the conservation purpose can nonetheless be treated as protected in perpetuity if the restrictions are extinguished by judicial proceeding and the easement deed ensures that the charitable donee, following sale of the property, will receive a proportionate share of the proceeds and use those proceeds consistently with the conservation purposes underlying the original gift. In  effect, the "perpetuity" requirement is deemed satisfied because the sale proceeds replace the easement as an asset deployed by the donee exclusively for conservation purposes. I.R.C. § 170(h)(5)(A).

Tax Law > ... > Deductions > Charitable Deductions > Charitable, Public & Religious Transfers

**HN4[ ] Charitable Deductions, Charitable, Public & Religious Transfers**

The requirements of Treas. Reg. § 1.170A-14(g)(6) are strictly construed.

Tax Law > ... > Deductions > Charitable Deductions > Charitable, Public & Religious Transfers

**HN5[ ] Charitable Deductions, Charitable, Public & Religious Transfers**

Where a contribution of property (other than publicly traded securities) is valued in excess of $5,000, the taxpayer must obtain a qualified appraisal of such property and attach to the return such information regarding such property and such appraisal as the Secretary may require. I.R.C. § 170(f)(11)(C). The required information includes an appraisal summary that must be attached to the return on which such deduction is first claimed for such contribution. Treas. Reg. § 1.170A-13(c)(2). The IRS has prescribed Form 8283 to be used as the appraisal summary. Failure to comply with this requirement generally precludes a deduction. I.R.C. §  170(f)(11)(A).

Tax Law > ... > Deductions > Charitable Deductions > Charitable, Public & Religious Transfers

**HN6[ ] Charitable Deductions, Charitable, Public & Religious Transfers**

Treas. Reg. § 1.170A-13(c)(2) requires the donor to attach a fully completed appraisal summary to the tax return on which the charitable contribution deduction is first claimed. Treas. Reg. § 1.170A-13(c)(2)(i)(B). A fully completed appraisal summary must include the manner of acquisition and the date of acquisition of the donated property by the donor as well as the cost or other basis of the property. Treas. Reg. § 1.170A-13(c)(4)(ii)(D) and (E). If a taxpayer has reasonable cause for being unable to provide the information required (relating to the manner of acquisition and basis of the contributed property), an appropriate explanation should be attached to the appraisal summary. Treas. Reg. § 1.170A-13(c)(4)(iv)(C)(1).

Tax Law > ... > Deductions > Charitable Deductions > Charitable, Public & Religious Transfers

**HN7**[ ]  **Charitable Deductions, Charitable, Public & Religious Transfers**

For purposes of Treas. Reg. § 1.170A-13, asserting that one may ignore a requirement does not constitute strict compliance with it. The doctrine of substantial compliance is designed to avoid hardship in cases where a taxpayer does all that is reasonably possible, but nonetheless fails to comply. Substantial compliance may be shown where the taxpayer provided most of the information required or made omissions solely through inadvertence. But in order to substantially comply, the taxpayer must satisfy all reporting requirements that relate to the substance or essence of the statute.

Tax Law > ... > Deductions > Charitable Deductions > Charitable, Public & Religious Transfers

**HN8**[ ]  **Charitable Deductions, Charitable, Public & Religious Transfers**

Treas. Reg. § 1.170A-13(c)(4) requires that an appraisal summary shall include information about basis. Treas. Reg. § 1.170A-13(c)(4)(ii)(E). The explicit disclosure of basis on Form 8283 is essential in alerting the Commissioner as to whether (and to what extent) further investigation may be needed. Where the taxpayer states on Form 8283 that basis information will not be provided, revenue agents cannot be required to sift through hundreds of pages of complex returns looking for possible clues about what the taxpayer's cost basis might be.

**Counsel:** [**1] Anson H. Asbury, Ethan J. Vernon, and Gilbert L. Carey, Jr., for petitioner.

Christopher D. Bradley, Jason P. Oppenheim, John W. Sheffield III, and John T. Arthur, for respondent.

**Judges:** LAUBER, Judge.

**Opinion by:** LAUBER

## Opinion

MEMORANDUM OPINION

LAUBER, Judge: This is one of many cases in this Court involving charitable contribution deductions for conservation easements. Currently before the Court are cross-motions for partial summary judgment filed by the Internal Revenue [*2] Service (IRS or respondent) and by petitioner. The questions presented by these motions are substantially identical to those decided adversely to the taxpayers in PBBM-Rose Hill, Ltd. v. Commissioner, 900 F.3d 193 (5th Cir. 2018); Oakbrook Land Holdings, LLC v. Commissioner, 154 T.C. __, 2020 U.S. Tax Ct. LEXIS 12 (May 12, 2020); Coal Prop. Holdings, LLC v. Commissioner, 153 T.C. 126 (2019); Oakhill Woods, LLC v. Commissioner, T.C. Memo. 2020-24; and Belair Woods, LLC v. Commissioner, T.C. Memo. 2018-159. Following the analyses in those opinions we will grant respondent's motion and deny petitioner's cross-motion.

Background

There is no dispute as to the following facts, which are drawn from the petition, the parties' motion papers, and the attached declarations and exhibits. Maple Landing, LLC (Maple Landing), is a Georgia limited liability company (LLC) that has operated at all times as a partnership for Federal income tax purposes. Maple Landing had its principal place of business in Georgia when its petition was filed.

In December 2008 Maple Landing acquired, by contribution [**2] from HRH Investments, LLC (HRH), a 293-acre tract of land in Effingham County, Georgia. On December 30, 2010, Maple Landing donated a conservation easement over 283 acres of that tract to the Georgia Land Trust (GLT or grantee), a "qualified organization" [*3] for purposes of section 170(h)(3).[1] We will refer to this 283-acre tract as the conserved

---

[1] All statutory references are to the Internal Revenue Code (Code) in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round monetary amounts to the nearest dollar.

area or the Property. The deed of easement was recorded the same day.[2]

The easement deed recites the conservation purposes and generally prohibits commercial or residential development. But it reserves certain rights to Maple Landing as grantor, including the rights to conduct commercial agricultural and timber-harvesting activities within the conserved area. Maple Landing also reserved the right to construct within the conserved area "a limited number of improvements and buildings." These improvements could include the development of "woods roads" for permitted agricultural and forestry activities, construction of agricultural buildings (including barns and sheds) covering up to 50% of a designated **[*4]** one-acre plot, maintenance of existing roads, and the construction of two residential **[**3]** driveways and utilities (including water, septic, and power lines) to serve two adjacent five-acre residential parcels owned by an affiliate of Maple Landing.

The deed recognizes the possibility that the easement might be extinguished at some future date. In the event the Property were sold following judicial extinguishment of the easement, paragraph 17 of the deed provided that "[t]he amount of the proceeds to which Grantee shall be entitled, after the satisfaction of any and all prior claims, shall be determined, unless otherwise provided by Georgia law at the time, in accordance with the Proceeds paragraph." (Neither party contends that Georgia law "otherwise provide[s].") Paragraph 19, captioned "Proceeds," specified that the grantee's share of any future proceeds would be determined

> by multiplying the fair market value of the Property unencumbered by this Conservation Easement (minus any increase in value after the date of this Conservation Easement attributable to improvements) by the ratio of the value of the Conservation Easement at the time of this conveyance to the value of the Property at the time of this conveyance without deduction for the value of the Conservation Easement. **[**4]**

Maple Landing timely filed Form 1065, U.S. Return of Partnership Income, for its taxable year beginning December 30, 2010, and ending December 31, 2010. On that return it claimed a charitable contribution deduction of $6,791,000 for its **[*5]** donation of the easement. Maple Landing relied on an appraisal by David R. Roberts, who used the "before and after method" to determine the easement's fair market value (FMV).[3]

Maple Landing included with its return a Form 8283, Noncash Charitable Contributions, executed by Mr. Roberts and GLT. When a taxpayer donates property (other than publicly traded securities) valued in excess of $5,000, the taxpayer must provide on Form 8283 specified information about the donated property, including the date and method of acquisition and the donor's "cost or adjusted basis." In the relevant boxes on Form 8283 Maple Landing wrote "see attachment" or "SA" and appended a three-page attachment. The attachment stated that the Property had been "acquired by donor" on December 18, 2008, by "purchase/exchange." With respect to "cost or adjusted basis" Maple Landing stated:

> A declaration of the taxpayer's basis in the property is not included in * * * the attached **[**5]** Form 8283 because of the fact that the basis of the **[*6]** property is not taken into consideration when computing the amount of the deduction.

The IRS selected Maple Landing's 2010 return for examination. On October 30, 2017, the IRS issued Maple Landing a timely notice of final partnership administrative adjustment (FPAA) disallowing the

---

[2] HRH or its affiliates contributed other tracts of land in Effingham County to other LLCs, and Effingham Managers, LLC, petitioner in this case, served as tax matters partner for most of these LLCs. Each LLC granted a conservation easement to GLT. The IRS has challenged the charitable contribution deductions claimed by the LLCs for those other donations. See Englewood Place, LLC v. Commissioner, T.C. Memo 2020-105; Riverside Place, LLC v. Commissioner, T.C. Memo 2020-103; Village at Effingham, LLC v. Commissioner, T.C. Memo 2020-102; Oakhill Woods, LLC v. Commissioner, T.C. Memo. 2020-24; Belair Woods, LLC v. Commissioner, T.C. Memo. 2018-159; Red Oak Estates, LLC v. Commissioner, T.C. Dkt. No. 13659-17; Cottonwood Place, LLC v. Commissioner, T.C. Dkt. No. 14076-17.

[3] Petitioner represents that Maple Landing's cost basis for the 293-acre tract was $506,265. Assuming that to be true, Mr. Roberts' valuation supposed that the Property had appreciated in value by more than 1,300% during one of the worst financial crises to hit the United States since the Great Depression. Mr. Roberts was the original appraiser in numerous other conservation easement cases that this Court has decided. See, e.g., Plateau Holdings, LLC. v. Commissioner, T.C. Memo. 2020-93; Woodland Prop. Holdings, LLC v. Commissioner, T.C. Memo. 2020-55; Oakhill Woods, LLC v. Commissioner, T.C. Memo. 2020-24.

charitable contribution deduction in full because Maple Landing had not shown that the requirements of section 170 were met. The FPAA alternatively determined that, if any deduction were allowable, Maple Landing had not established that the FMV of the easement exceeded $0. The FPAA determined a 40% "gross valuation misstatement" penalty under section 6662(h) and (in the alternative) a 20% accuracy-related penalty under other provisions of section 6662(a).

Petitioner timely petitioned this Court for readjustment of the partnership items, see sec. 6226(f), and the parties filed cross-motions for partial summary judgment. Respondent contends that the charitable contribution deduction was properly disallowed for two independently sufficient reasons. First, he contends that the conservation purpose underlying the easement is not "protected in perpetuity," see sec. 170(h)(5)(A), because the easement deed fails to comply with the [**6] regulations governing judicial extinguishment, see sec. 1.170A-14(g)(6), Income Tax Regs. Second, he contends that Maple Landing did not attach to its [*7] 2010 return, as the regulations require, a fully completed appraisal summary on Form 8283. See sec. 1.170A-13(c)(2)(i)(B), Income Tax Regs. Petitioner contends that Maple Landing complied with all regulatory requirements and (if it did not) that the regulations imposing these requirements are invalid. We have rejected all of petitioner's arguments in cases involving substantially similar deeds of easement, and we do so again here.

Discussion

A. Summary Judgment Standard

*HN1*[⬆] The purpose of summary judgment is to expedite litigation and avoid costly, unnecessary, and time-consuming trials. See FPL Grp., Inc. & Subs. v. Commissioner, 116 T.C. 73, 74 (2001). We may grant partial summary judgment regarding an issue as to which there is no genuine dispute of material fact and a decision may be rendered as a matter of law. Rule 121(b); Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002). Petitioner has alleged no genuine dispute of material fact affecting the two questions that respondent has proposed for summary adjudication. We conclude that these issues may appropriately be adjudicated summarily.

[*8] B. Judicial Extinguishment

*HN2*[⬆] The Code generally restricts a taxpayer's charitable contribution deduction for the donation of "an interest in property which [**7] consists of less than the taxpayer's entire interest in such property." Sec. 170(f)(3)(A). But there is an exception for a "qualified conservation contribution." Sec. 170(f)(3)(B)(iii), (h)(1). For the donation of an easement to be a "qualified conservation contribution," the conservation purpose must be "protected in perpetuity." Sec. 170(h)(5)(A).

*HN3*[⬆] The regulations set forth detailed rules for determining whether this "protected in perpetuity" requirement is met. Of importance here are the rules governing the mandatory division of proceeds in the event the property is sold following a judicial extinguishment of the easement. See sec. 1.170A-14(g)(6), Income Tax Regs. The regulations recognize that "a subsequent unexpected change in the conditions surrounding the [donated] property * * * can make impossible or impractical the continued use of the property for conservation purposes." Id. subdiv. (i). Despite that possibility, "the conservation purpose can nonetheless be treated as protected in perpetuity if the restrictions are extinguished by judicial proceeding" and the easement deed ensures that the charitable donee, following sale of the property, will receive a proportionate share of the proceeds and use those proceeds consistently with the conservation purposes underlying the [**8] original gift. Ibid. In [*9] effect, the "perpetuity" requirement is deemed satisfied because the sale proceeds replace the easement as an asset deployed by the donee "exclusively for conservation purposes." Sec. 170(h)(5)(A).

The judicial extinguishment provisions of the deed in this case are substantially similar to those that we considered in Coal Prop. Holdings, 153 T.C. at 130-131. Following our reasoning in that case, we conclude that Maple Landing's deed fails to satisfy the "protected in perpetuity" requirement for two reasons.

First, the regulatory fraction used in the deed to determine the grantee's proportionate share of post-extinguishment proceeds is applied, not to the full sale proceeds--an amount presumably equivalent to the FMV of the Property at the time of sale--but to the proceeds "minus any increase in value after the date of this Conservation Easement attributable to improvements." Thus, the grantee's share is improperly reduced on account of (1) appreciation in the value of improvements existing when the easement was granted plus (2) the

FMV of any improvements that the donor or its successors subsequently make to the Property. By reducing the grantee's share in this way, the deed violates the regulatory requirement that **[\*\*9]** the donee receive, in the event the Property is sold following extinguishment of the easement, a share of proceeds that is "at least equal to the proportionate value that the perpetual conservation restriction at the time of the gift, bears to the value **[\*10]** of the property as a whole at that time." See sec. 1.170A-14(g)(6)(ii), Income Tax Regs.[4]

As we have noted previously, **HN4**[⬆] the requirements of this regulation "are strictly construed." Carroll v. Commissioner, 146 T.C. 196, 212 (2016). Because the grantee in this case "is not absolutely entitled to a proportionate share of * * * [the] proceeds" upon a post-extinguishment sale of the Property, the conservation purpose underlying the contribution is not "protected in perpetuity." Coal Prop. Holdings, 153 T.C. at 127, 139 (quoting Carroll, 146 T.C. at 212); accord, Plateau Holdings, LLC v. Commissioner, T.C. Memo. 2020-93; Oakbrook Land Holdings, LLC v. Commissioner, T.C. Memo. 2020-54. The U.S. Court of Appeals for the Fifth Circuit has likewise sustained the disallowance of a charitable contribution deduction where the judicial extinguishment provision of an easement deed included a carve-out for donor improvements similar to that here. See PBBM-Rose Hill, 900 F.3d at 208.

**[\*11]** The easement deed here has a second problem, which was also present in Coal Prop. Holdings. The grantee's tentative share of the proceeds, as determined under paragraph 19 of the deed, is adjusted further by paragraph 17. It provides that the grantee's share will be determined **[\*\*10]** under the Proceeds paragraph, but only "after the satisfaction of any and all prior claims." Prior claims against the sale proceeds might be held by various creditors of Maple Landing or its successors.

It is not necessarily unreasonable for a deed to provide that prior claims may be paid from sale proceeds. What is unreasonable is the requirement that <u>all</u> prior claims be paid out of <u>the grantee's share</u> of the proceeds, even if those claims represent liabilities of Maple Landing or its successors. See Coal Prop. Holdings, 153 T.C. at 145 n.5. Because the grantee's share of the proceeds is improperly reduced by carve-outs both for donor improvements and for claims against the donor, the deed's judicial extinguishment provisions do not satisfy the regulatory requirements.

If the regulation is interpreted, as we have interpreted it, to make Maple Landing ineligible for a charitable contribution deduction, Maple Landing contends that the regulation is invalid. It urges that section 1.170A-14(g)(6), Income Tax Regs., is an "arbitrary and capricious" rule promulgated in violation of the Administrative Procedure Act. And it contends that the regulation is substantively **[\*12]** invalid under the test set forth in Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc., 467 U.S. 837, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984). We comprehensively addressed and rejected both of these arguments **[\*\*11]** in a recent Court-reviewed Opinion. See Oakbrook Land Holdings, 154 T.C. at __, 2020 U.S. Tax Ct. LEXIS 12 at *53-75). We need not repeat that analysis here.

In sum, we hold that the conservation purpose underlying the easement was not "protected in perpetuity" as required by section 170(h)(5)(A). For that reason the charitable contribution deduction claimed by Maple Landing must be denied in its entirety. See Coal Prop. Holdings, 153 T.C. at 139. We will therefore grant respondent's motion for partial summary judgment on his first theory.[5]

---

[4] The pre-contribution improvements to the conserved area in this case appear to be less substantial than in Coal Prop. Holdings, LLC v. Commissioner, 153 T.C. 126, 131 (2019). But the deed reserved to Maple Landing the right to make post-contribution improvements to the conserved area, including the rights (for example) to construct barns, sheds, roads, driveways, and utilities (including water, septic, and power lines) to serve the conservation area and/or the adjacent residential parcels. These factual differences have little impact on our analysis because the regulation does not permit any reduction of the donee's share on account of such donor improvements.

[5] Petitioner draws our attention to Priv. Ltr. Rul. 200836014 (Sept. 5, 2008) (PLR), in which the IRS found unobjectionable an easement deed with a judicial extinguishment clause resembling that here. Petitioner contends that respondent's interpretation of the regulation as set forth in that PLR is binding on respondent under Auer v. Robbins, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L. Ed. 2d 79 (1997). Petitioner's argument ignores the fact that determinations embodied in a PLR "may not be used or cited as precedent." Sec. 6110(k)(3). The taxpayer in PBBM-Rose Hill brought the same PLR to the Court of Appeals' attention, but that court paid no heed to it, finding the regulation unambiguous on its face. See PBBM-Rose Hill, Ltd. v. Commissioner, 900 F.3d 193, 207-208 (5th Cir. 2018). We have done the same. See Coal Prop. Holdings, 153 T.C. at 144. In Oakbrook Land Holdings, LLC v. Commissioner, T.C. Memo. 2020-54, we dismissed reliance

 [*13]  C. Appraisal Summary

**HN5**[↑] Where a contribution of property (other than publicly traded securities) is valued in excess of $5,000, the taxpayer must "obtain[] a qualified appraisal of such property and attach[] to the return * * * such information regarding such property and such appraisal as the Secretary may require." Sec. 170(f)(11)(C). The required information includes "an appraisal summary" that must be attached "to the return on which such deduction is first claimed for such contribution." Deficit Reduction Act of 1984 (DEFRA), Pub. L. No. 98-369, sec. 155(a)(1)(B), 98 Stat. at 691; see sec. 1.170A-13(c)(2), Income Tax Regs. The IRS has prescribed Form 8283 to be used as the "appraisal summary." Jorgenson v. Commissioner, T.C. Memo. 2000-38, 79 T.C.M. (CCH) 1444, 1450. Failure to comply with this requirement generally precludes a deduction. See sec. 170(f)(11)(A) (providing that "no deduction shall be allowed" unless a taxpayer meets the appraisal [**12] summary requirements of section 170(f)(11)(C)).

In his response to petitioner's cross-motion, respondent contends that Maple Landing's deduction should be disallowed because it failed to attach to its return a properly completed appraisal summary. Petitioner contends that Maple Landing strictly (or at least substantially) complied with the applicable regulation. In the alternative it contends that the regulation is invalid.

 [*14]  **HN6**[↑] The regulation requires the donor to "[a]ttach a fully completed appraisal summary" to the tax return on which the charitable contribution deduction is first claimed. Sec. 1.170A-13(c)(2)(i)(B), Income Tax Regs. A fully completed appraisal summary must include "[t]he manner of acquisition * * * and the date of acquisition of the [donated] property by the donor" as well as "[t]he cost or other basis of the property." Id. subpara. (4)(ii)(D) and (E). "If a taxpayer has reasonable cause for being unable to provide the information required * * * (relating to the manner of acquisition and basis of the contributed property), an appropriate explanation should be attached to the appraisal summary." Id. subdiv. (iv)(C)(1).

In the relevant boxes on its Form 8283 Maple Landing wrote "see attachment" and appended a three-page attachment. The [**13] attachment said that the Property had been acquired by the donor on December 18, 2008, by "purchase/exchange." Petitioner represents that Maple Landing actually acquired the 293 acres in December 2008 by contribution from HRH. The attachment said that Maple Landing would not provide cost basis information "because of the fact that the basis of the property is not taken into consideration when computing the amount of the deduction." The taxpayers in Oakhill Woods, at *7-*8, and Belair Woods, 116 T.C.M. (CCH) at 326-327, had attached the same text, verbatim, to the Forms 8283 enclosed with their returns.

 [*15]  We hold that Maple Landing did not report its cost basis information as the regulation requires and as Form 8283 directs. The explanation it attached, far from showing that it was unable to provide this information, simply asserted that the information was not necessary. In effect, Maple Landing asserted that taxpayers are free to ignore the requirement that they report cost basis. **HN7**[↑] "Asserting that one may ignore a requirement does not constitute strict compliance with it." Oakhill Woods, at *13; Belair Woods, 116 T.C.M. (CCH) at 327-328.

In Bond v. Commissioner, 100 T.C. 32, 41-42 (1993), we held that some of the reporting requirements in section 1.170A-13, Income Tax Regs., can be satisfied by substantial, rather than by literal, compliance. "The doctrine of substantial compliance is designed [**14] to avoid hardship in cases where a taxpayer does all that is reasonably possible, but nonetheless fails to comply." Durden v. Commissioner, T.C. Memo 2012-140, 103 T.C.M. (CCH) 1762, 1763. Substantial compliance may be shown where the taxpayer "provided most of the information required" or made omissions "solely through inadvertence." Hewitt v. Commissioner, 109 T.C. 258, 265 & n.10 (1997), aff'd without published opinion, 166 F.3d 332 (4th Cir. 1998). But in order to substantially comply, the taxpayer must satisfy all reporting requirements that relate "to the substance or essence of the statute." Bond, 100 T.C. at 41 (quoting Taylor v. Commissioner, 67 T.C. 1071, 1077 (1977)).

 [*16]  We hold that Maple Landing did not substantially comply because its failure to supply cost basis violated the essence of the statute. In enacting DEFRA's heightened reporting requirements, Congress aimed to give the IRS tools that would enable it to identify inflated charitable contribution deductions. See RERI Holdings I, LLC v. Commissioner, 149 T.C. 1, 16-17 (2017), aff'd sub nom. Blau v. Commissioner, 924 F.3d 1261 (D.C. Cir. 2019). The requirement to disclose cost basis when

---

on Auer deference because "the 'traditional tools of construction' le[d] us to hold that the Commissioner's construction of the regulation is correct even if we look at the question de novo." Id. at *25 (quoting Kisor v. Wilkie, 588 U.S. __, __, 139 S. Ct. 2400, 2415, 204 L. Ed. 2d 841 (2019)).

that information is reasonably obtainable is necessary to facilitate the Commissioner's efficient identification of overvalued property. Unless the taxpayer complies with the requirement that he disclose his cost basis and the date and manner of acquiring the property, the Commissioner will be deprived of an essential tool that Congress intended him to have. See **[\*\*15]** Oakhill Woods, at \*15-\*22; Belair Woods, 116 T.C.M. (CCH) at 328-330.[6]

 **[\*17]** Nor is this a case where the taxpayer did "all that is reasonably possible," Durden, 103 T.C.M. (CCH) at 1763, or omitted information "solely through inadvertence," Hewitt, 109 T.C. at 265 n.10. Maple Landing explicitly declined to report its cost basis information, asserting that this information was unnecessary because "basis * * * is not taken into consideration when computing the amount of the deduction." This was not an instance of inadvertent omission but of a conscious election not to supply information damaging to its position.[7]

Finally, petitioner in its cross-motion contends that the regulation requiring disclosure of "cost or other basis" on the appraisal summary is invalid. According to petitioner, this regulation does not "give effect to the unambiguously expressed intent of Congress" and is thus invalid under Chevron, U.S.A., Inc., 467 U.S. at 842-843. The taxpayer in Oakhill Woods, at \*22-\*27, made precisely the same argument and we rejected it. We do so again here.

For these reasons we hold that Maple Landing did not comply, strictly or substantially, with the regulatory reporting requirements. Accord, Oakhill Woods, at \*21-\*22; Loube v. Commissioner, T.C. Memo. 2020-3, at \*15-\*23; Belair **[\*18]** Woods, 116 T.C.M. (CCH) at 329-330. This failure supplied an independent ground for denial of its charitable contribution deduction.[8]

To reflect the foregoing,

An order will be issued granting respondent's motion **[\*\*16]** for partial summary judgment and denying petitioner's cross-motion.

---

**End of Document**

---

[6] Petitioner contends that Maple Landing supplied, elsewhere on its tax return, information from which its cost basis could be derived, e.g., on Schedule L, Balance Sheets per Books. We have rejected that argument previously and reject it again here. See Oakhill Woods, at \*19-\*20; Belair Woods, 116 T.C.M. (CCH) at 329. *HN8*[⬆] The regulation requires that "[a]n appraisal summary shall include" information about basis. Sec. 1.170A-13(c)(4)(ii)(E), Income Tax Regs. The explicit disclosure of basis on Form 8283 is essential in alerting the Commissioner as to whether (and to what extent) further investigation may be needed. Where the taxpayer states on Form 8283 (as Maple Landing did) that basis information will not be provided, revenue agents cannot be required to sift through hundreds of pages of complex returns looking for possible clues about what the taxpayer's cost basis might be.

[7] Given our disposition, we need not decide whether Maple Landing provided inaccurate information concerning "[t]he manner of acquisition * * * and the date of acquisition of the property by the donor," sec. 1.170A-13(c)(4)(ii)(D), Income Tax Regs., or (if it did) whether that failure would have supplied sufficient grounds, standing alone, for disallowance of the charitable contribution deduction.

[8] Section 170(f)(11)(A)(ii)(II) provides that a charitable contribution deduction may be allowed, notwithstanding the taxpayer's failure to comply with the appraisal summary requirements, "if it is shown that the failure to meet such requirements is due to reasonable cause and not to willful neglect." Petitioner has not advanced a "reasonable cause" defense under this provision and has adduced no facts that would be relevant in determining its availability.