# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| ANDREW LECHTER; SYLVIA THOMPSON; et al., <br><br> Plaintiffs, <br><br> v. <br><br> APRIO, LLP f/k/a HABIF, AROGETI & WYNNE, LLP; et al, <br><br> Defendants. | CIVIL ACTION NO. <br> 1:20-CV-01325-AT |

## DEFENDANTS APRIO, LLP AND ROBERT GREENBERGER'S SUPPLEMENTAL OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

John E. Floyd
John H. Rains IV
Jennifer L. Peterson
**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia 30309
(404) 881-4100 (telephone)
(404) 881-4111 (facsimile)

*Attorneys for Defendants Aprio, LLP and Robert Greenberger*

#3611391v2

Aprio accepts and will not re-brief the Court's preliminary conclusions both that Plaintiffs lack standing to assert claims relating to SCEs in which they did not invest and that Plaintiffs have failed to prove that their fraud, Georgia RICO, malpractice, and fiduciary duty claims meet the requirements of Rule 23. Dkt. 362 at 14, 19. Nothing in either Plaintiffs' supplemental class brief or the attached exhibits cures the deficiencies Plaintiffs face under Rule 23 for a class asserting negligent misrepresentation claims in connection with the nine SCEs which Plaintiffs cite. Instead, Plaintiffs repeat their tactic from the initial briefing—they focus on the evidence they like the best, and ignore the governing Eleventh Circuit predominance test and the compelling evidence Aprio would present if the case is tried. The Court should deny Plaintiffs' motion to certify a class.

I.  **Plaintiffs have no basis to assert claims for Big K and Lontrac.**

As the Court noted in its March 24, 2023, Order, "[a]fter reviewing the Aprio Defendants' arguments, Plaintiffs suddenly changed track in their Reply brief," and now base their claims on the theory that they received and relied on alleged misrepresentations in K-1s prepared by Aprio. Dkt. 362 at 4. But the record establishes that Aprio did **not** prepare a K-1 for Plaintiff Lechter for Big K or Lontrac (he is the only Plaintiff claiming involvement in those SCEs). Dkt. 332-8 (Tuck Dec.) ¶ 5. Aprio understands that Lechter may have participated in funds that invested in Big K and Lontrac, and those funds may have received K-1s.

Plaintiffs, however, have submitted no evidence on that score and no evidence of what, if any, tax information the funds provided to Lechter. In any event, because Plaintiffs' claims now depend on their having received and relied on Aprio-prepared K-1s, and there is no evidence that any Plaintiff received or relied on an Aprio-prepared K-1 for Big K or Lontrac, Plaintiffs may not assert, or have certified, claims relating to those SCEs.

**II.    Plaintiffs have not proved that a negligent misrepresentation claim may be certified for class treatment.**

The Eleventh Circuit requires that the predominance inquiry be conducted based on analysis of the evidence relating to the "parties' claims and defenses and their elements." *Brown v. Electrolux Home Prods.*, 817 F.3d 1225, 1234 (11th Cir. 2016). Under Georgia law, "To prove negligent misrepresentation, a plaintiff must establish: '(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance.'… [A] plaintiff must establish that the defendant made false representations on which the plaintiff justifiably relied." *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1288-89 (11th Cir. 2007) (citing *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426 (1997)). And "[t]o establish reasonable reliance under Georgia law as to . . . negligent misrepresentation, a plaintiff must show that it exercised due diligence." *Id.* (citation omitted).

## A. Plaintiffs have failed to prove that the K-1s contain representations by Aprio.

Plaintiffs have not "establish[ed] that [Aprio] made" any representations by preparing K-1s. *Fin. Sec. Assurance*, 500 F.3d at 1289. The K-1s are not statements by Aprio of the value of the conservation easements, but rather straight pass-throughs of statements of value made entirely by appraisers engaged by the partnerships. The facts here are like those in *Czuker v. Ernst & Young*, 2007 WL 1559505 (Cal. Ct. App. May 30, 2007). There, the plaintiff alleged that the K-1s the accounting firm prepared contained false representations of the value of his partnership investments. The court held that "it is unreasonable to interpret the unaudited tax returns as expressions of E & Y's opinion as to the value of [plaintiff's] investments in the partnerships; the unaudited tax returns are nothing more than reiterations of the values as reflected in the partnerships' records." *Id.* at *13; *see also Boothe v. Comm'r*, T.C. Memo 1986-361, 1986 WL 21562, at n.3 (U.S. Tax Ct. 1986).

The Georgia Supreme Court affirmed the dismissal of a negligent misrepresentation claim on similar grounds in *Global Payments, Inc. v. InComm Financial Services, Inc.*, 308 Ga. 842 (2020). There, a claim "based on [the defendant's] having transmitted to [the plaintiff] allegedly false information generated by a third party" failed because "the allegations of the complaint show

that [the defendant] merely transmitted data concerning debit and credit card transactions without representing that the transactions were legitimate." *Id.* at 842.

      **B.**    **Whether the representation alleged here was false turns on individualized evidence concerning each appraisal.**

The only reference that any of the K-1s make to conservation easements is the language, "EXCESS VALUE OF CONSERVATION EASEMENT OVER BASIS," followed by a number. Dkt. No. 350-3 at 71. Even if Plaintiffs could establish that these words constitute a representation by Aprio, they must prove that the representation is false. But individualized, not common, evidence would be required to prove falsity here, *i.e.*, to prove that the conservation easement did not have the value that the appraiser and partnership provided to Aprio to calculate the number in the K-1. Whether the value of the conservation easement was lower than the value used in the K-1 turns on the validity of the appraisal. And the validity of the appraisal turns on individualized evidence.[1]

That the IRS has audited particular transactions or is litigating value in tax court is not evidence that the excess value reported on any K-1 is false. Nor is the fact that the IRS has assessed a "promoter" penalty against Mr. Greenberger—

---

[1] Taking the Oakhill Woods transaction as an example, Mr. Greenberger testified that he believed the appraisal for the easement donation was reasonable at the time he prepared that tax return because the underlying real estate had been purchased at a "fire sale" price—in other words, the basis related to the purchase of the real property was dramatically lower than market forces would dictate. Dkt. No. 384-1 at 117-18.

Aprio would still be entitled to introduce expert testimony at trial as to value for each easement, and this evidence would be different for every transaction. And it is far from certain that the IRS's accusatory Form 886-A "Explanation of Items" laying out the Service's penalty case against Mr. Greenberger will even be admissible evidence at any trial. *See United States v. Stein*, 584 F. Supp. 2d 660, 662 (S.D.N.Y. 2008) ("Again, analysis of whether a specific piece of information in an RAR is admissible under Rule 803(8) turns on whether it was 'routine and non-adversarial.' Unlike the tax loss, the calculation of the tax benefit reflects IRS analysis and judgment. The calculation of liability is the first step in a possible adversarial process—the taxpayer could accept the calculations and waive his or her right to appeal, or dispute the IRS's conclusion within that agency or in Court. This information is thus 'adversarial in nature' and excludable as hearsay."). And beyond hearsay problems, both the "Explanation of Items" in the penalty case and the administrative appeal correspondence by Mr. Greenberger's tax counsel from which Plaintiffs selectively quote pose unfair prejudice and juror confusion issues that further undercut their admissibility. Fed. R. Evid. 403.

    **C.    Whether Aprio was negligent, *i.e.*, had a duty and breached it, turns on individualized evidence.**

Further, Plaintiffs cannot prevail merely by proving the existence of a false representation; they must prove that Aprio was "negligent" in making that representation. Proof of negligence requires proof of a breach of duty, and here,

proof of the existence of a duty will turn on individualized evidence. Plaintiffs' claim that Circular 230 imposed a duty turns on the individual characteristics of each appraisal. And in any event, the pertinent tax preparer regulations reject the notion that a preparer must "audit, examine or review" or otherwise "verify independently, information provided by the taxpayer, advisor, other tax return preparer, or other party." 26 I.R.C. § 1.6694-1(e). To be sure, those regulations do not allow a preparer to blindly rely on incomplete or incorrect information, but the most applicable example they give is that an accountant cannot accept a real estate valuation without an appraisal or supporting Form 8283, which is nothing like Plaintiffs' allegations here. *Id*. Ex. (e)(3)(1).

That Aprio followed a set of uniform procedures for preparing returns in any particular tax years or supposedly engaged in "data entry"[2] does not establish that any return prepared by the firm—whether by Mr. Greenberger or some other accountant—was negligently prepared. Rather, competing expert testimony as to each transaction will focus on the information supplied to Aprio, whether it was incomplete or incorrect, and whether the standard of care during that particular tax

---

[2] The "data entry" phrase on which Plaintiffs fixate comes from an administrative appeal letter drafted by Mr. Greenberger's tax counsel. Mr. Greenberger testified that he does not believe that simplified characterization of Aprio's work is accurate or complete. Dkt. No. 384-1 at 65-67. Indeed, Mr. Greenberger explained that the processes Aprio used to prepare tax returns—even where standardized—changed over time. *Id*. at 67-68.

year required any further inquiry, and if so, what sort.[3] Again, all of this will involve individualized evidence and proof.

### D. Whether each Class Member reasonably relied and exercised due diligence turns on individualized evidence.

Plaintiffs must prove that each Class Member reasonably relied on the allegedly false representation. *Fin. Sec. Assurance,* 500 F.3d at 1289. Determining whether each Class Member actually and reasonably relied on such a representation will unquestionably necessitate individualized inquiries that would predominate over any common questions.

First, there is no common proof of actual reliance here, much less reasonable reliance. Plaintiffs **assert** that each putative Class Member reported the charitable deduction number listed on their K-1 on their individual tax return. **But the record contains no evidence of that**; the only evidence in the record is to the contrary. Plaintiffs have not filed any putative Class Member's individual tax return (beyond a recalculation return Plaintiff Thompson filed after a deduction was disallowed), and thus have offered no proof that any, much less every, putative Class Member relied on the K-1s. *See Fin. Sec. Assurance*, 500 F.3d at 1289 (affirming summary

---

[3] Mr. Greenberger explained during his deposition the tremendous variation and differences between the easement transactions, the work that went into preparing tax returns for each transaction, and how much of a review any particular easement transaction received. Dkt. No. 384-1 at 41-43. These differences highlight how different the determination of negligence would be for a jury as to each transaction.

judgment on negligent misrepresentation claim because plaintiff "cannot prove that it justifiably relied on any alleged misrepresentation . . . in that document" where it "failed to put forth any evidence that any of its employees had actually read the" document). Thompson testified that she did **not** report the charitable deduction numbers from the K-1 on her individual return. Dkt. No. 332-2 at 18-19, 22-24.

Second, proof of reasonable reliance is inherently individualized. Again, this is not a fraud on the market case, and there is no basis for any presumption of reasonable reliance. Indeed, the Court has already pointed out individualized issues that will affect the reasonable reliance inquiry. Did the Class Member discuss the deduction with their individual accountant? What questions did they ask?

Third, the disclaimers, disclosures, and warnings provided in connection with the transactions are different. Dkt. No. 332-5 at 2-4; Dkt. No. 332-4 at 2-9. Given this Court's rulings in similar putative class actions (*Turk* and *Peskin*), some of the disclosures and "storm warnings" some members of the putative class received may effectively foreclose their claims. Again, this is an individualized issue, and one that could be outcome-determinative for each putative Class Member.

### E. Other issues preclude certification of a negligent misrepresentation class.

Beyond the issues outlined above, and as Aprio's earlier briefing and oral argument have demonstrated, there are several other individualized issues that

remain and which preclude certification of a class. These include proximate cause, statute of limitations and related tolling doctrines (some of which turn on what a Class Member knew or reasonably relied upon in waiting to file suit), and engagement letter-based defenses such as limitations on liability, shortened limitations periods, and arbitration clauses. The additional discovery Plaintiffs have obtained and their supplemental brief do nothing to address these other issues.

### III. Georgia's apportionment of fault statute will require individualized determinations of party and nonparty fault for each putative Class Member.

In addition to the other individualized issues that will predominate at trial, if this Court certifies a class involving some subset of easement transactions on a negligent misrepresentation theory, the jury will have to make apportionment of fault determinations for every Class Member. As the notice of nonparty fault Aprio recently filed demonstrates, Dkt. No. 388, the nonparties at issue for even the three named Plaintiffs are different. Moreover, a jury could find that the fault of particular Class Members, named Plaintiffs or otherwise, varies. For example, Mrs. Thompson and Mr. Lechter have markedly different levels of sophistication and approached investing in easement transactions very differently. A jury might apportion ten percent of fault to Mrs. Thompson but fifty-five percent to Mr. Lechter. O.C.G.A. § 51-12-33 would reduce the damages a Class Member like Mrs. Thompson could recover in this example by ten percent, but a finding of fifty-

five percent fault against Mr. Lechter would foreclose any recovery by him. O.C.G.A. § 51-12-33(g). These individualized apportionment issues present yet another barrier to class certification.

### IV. Certifying a smaller subset of easement transactions does not cure the predominance problems that foreclose class certification.

Even though Plaintiffs continue to argue for the certification of a class containing dozens of easement transactions, this Court should not certify a smaller class of 9 or even 7 transactions. While a smaller class of this sort would overcome the named-Plaintiff standing issue, it would not solve the individualized issue-predominance concerns outlined in this brief and Aprio's earlier class briefing and oral argument presentations. The accuracy of the valuations in the appraisals will necessitate a transaction-by-transaction presentation of evidence, and within each transaction, questions like reliance, apportionment, and some specific defenses will require separate proof for each Class Member.

### CONCLUSION

The additional discovery Plaintiffs conducted has not changed the record in a way that supports certifying a class. Moreover, Plaintiffs' supplemental brief neither engages the Eleventh Circuit precedent that forecloses class certification in a case like this, nor grapples with the issues that this Court outlined in its order staying consideration of the class certification motion. Accordingly, this Court should deny Plaintiffs' motion to certify a class.

Respectfully submitted this 16th day of January, 2024.

/s/ *John H. Rains IV*
John E. Floyd
Georgia Bar No. 266413
floyd@bmelaw.com
John H. Rains IV
Georgia Bar No. 556052
rains@bmelaw.com
Jennifer L. Peterson
Georgia Bar No. 601355
peterson@bmelaw.com

**BONDURANT, MIXSON & ELMORE, LLP**
3900 One Atlantic Center
1201 West Peachtree Street, N.W.
Atlanta, Georgia  30309
(404) 881-4100 (telephone)           *Attorneys for Defendants*
(404) 881-4111 (facsimile)           *Aprio, LLP and Robert Greenberger*

#3611391v2                Signature Page

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of **DEFENDANTS APRIO, LLP AND ROBERT GREENBERGER'S SUPPLEMENTAL OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** was served on all counsel of record through the Court's electronic filing system.

This 16th day of January, 2024.

*/s/ John H. Rains IV*
John H. Rains IV
